# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Wells Fargo Bank, N.A. v. Zwolinski*, 2013 IL App (1st) 120612

---

| | |
|---|---|
| Appellate Court Caption | WELLS FARGO BANK, N.A., Successor by Merger to Wells Fargo Home Mortgage, Inc., Plaintiff-Appellee, v. ALFRED ZWOLINSKI, Defendant-Appellant (Harris N.A., Corby S. Hagan, Beata Zwolinski, Unknown Heirs and Legatees of Alfred Zwolinski, Defendants). |
| District & No. | First District, First Division<br>Docket No. 1-12-0612 |
| Filed | May 6, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In a mortgage foreclosure action, defendant's appeal from the trial court's denial of his motion to reconsider the denial of his motion to quash service of summons was dismissed due to his failure to serve any of the other parties with his notice of appeal pursuant to the circuit court's rules and the significant prejudice suffered by the other parties. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 09-CH-50400; the Hon. David B. Atkins, Judge, presiding. |
| Judgment | Appeal dismissed. |

Counsel on Appeal     Stephen Richek, of Chicago, for appellant.

Noonan & Lieberman, Ltd., of Chicago (James V. Noonan and Ruth B. Sosniak, of counsel), for appellee.

Panel     JUSTICE CUNNINGHAM delivered the judgment of the court, with opinion.

Justices Rochford and Delort concurred in the judgment and opinion.

**OPINION**

¶ 1     This appeal arises from a January 30, 2012 order entered by the circuit court of Cook County which denied defendant-appellant Alfred Zwolinski's (Alfred) motion to reconsider an order denying his motion to quash service. On appeal, Alfred argues that: (1) service of process was invalid because plaintiff-appellee Wells Fargo Bank, N.A. (Wells Fargo), successor by merger to Wells Fargo Home Mortgage, Inc., failed to comply with Cook County Circuit Court Rule 7.3 (Cook Co. Cir. Ct. R. 7.3 (Oct. 1, 1996)) when it sought leave to serve Alfred by publication; and (2) service of process was invalid because Wells Fargo did not conduct due inquiry and diligent inquiry before filing an affidavit for service by publication pursuant to section 2-206(a) of the Illinois Code of Civil Procedure (Code) (735 ILCS 5/2-206(a) (West 2010)). For the following reasons, we dismiss this appeal for violation of Illinois Supreme Court Rule 303(c) (eff. May 30, 2008).

¶ 2                    BACKGROUND

¶ 3     On June 1, 2003, Alfred executed a promissory note in the principal amount of $90,355 payable to Wells Fargo in return for a loan. Also, on June 1, 2003, Alfred secured the loan by executing a mortgage on real property located at 6151 West Roscoe Street, Chicago, Illinois (Roscoe property). Defendant Beata Zwolinski (Beata) signed the mortgage as a "non-vested spouse."

¶ 4     On December 16, 2009, Wells Fargo filed a complaint in the circuit court of Cook County to foreclose the mortgage. The complaint alleged that Alfred defaulted on monthly payments for the period of September 2009 to December 2009, and that the balance due as of the time of the complaint was $35,324.16, plus interest. The following parties were joined as defendants: Beata; Corby S. Hagan (Hagan), a judgment creditor; Harris N.A. (Harris), a junior mortgagee; and unknown heirs and legatees of Alfred. Additionally, on December 16, 2009, the clerk of the court issued a mortgage foreclosure summons to be served on each defendant. The mortgage foreclosure summons instructed the process server to serve Alfred and Beata at the Roscoe property.

¶ 5        Maricruz Garcia (Garcia), a special process server and employee of ProVest, LLC (ProVest), executed an affidavit which stated that on December 19, 2009, she attempted to serve Beata at the Roscoe property. The affidavit stated that the Roscoe property was a one-story, single-family home that was occupied and was not for sale. Further, the affidavit stated that Garcia allegedly spoke with a tenant of the Roscoe property who stated that Beata was the landlord of the Roscoe property and that she lived "somewhere in Elmwood Park." Additionally, on December 19, 2009, Garcia executed a second affidavit which stated that on that date, she attempted to serve Alfred at the Roscoe property. Garcia's second affidavit contained a description of the Roscoe property identical to the description in her first affidavit. Further, Garcia's second affidavit stated that the alleged tenant of the Roscoe property stated that he "has never [heard] of [Alfred] and does not reside here."

¶ 6        On December 29, 2009, Garcia successfully effectuated personal service on Beata at 2731 North 73rd Avenue, Elmwood Park, Illinois (Elmwood Park property). In January 2010, Lynda Hansell (Hansell), an employee of ProVest, executed an affidavit of due and diligent search which stated that "[a]fter diligent search and inquiry by [Hansell], the residence of [Alfred] is unknown to [Hansell]." Hansell's affidavit listed Alfred's last known address as the Roscoe property. Further, Hansell's affidavit stated that the following inquiries were made in an effort to find an alternate address for Alfred: a search using his social security number; an employment comprehensive database search; an inquiry of creditors; a directory assistance search; a vessel search; a voter registration search; a department of state professional licenses search; a nationwide masterfile death search; a nationwide aircraft search; a nationwide pilot search; a department of corrections inquiry; a Freedom of Information Act (FOIA) inquiry; a county jail inquiry; a property tax inquiry; and a federal prison search. The only inquiries that yielded any results were the social security number inquiry, the inquiry of creditors, and the FOIA inquiry, which all listed the Roscoe property as Alfred's last known address. Hansell's affidavit stated that the Roscoe property is the only address at which an attempt to serve Alfred was made.

¶ 7        On January 28, 2010, Juliet Rowland, a special process server and employee of ProVest, filed an affidavit stating that Beata and Harris had been served. The affidavit also stated that Alfred and Hagan had not been served. On February 4, 2010, counsel for Wells Fargo filed an affidavit for service by publication pursuant to section 2-206(a) of the Code. The affidavit stated that on due inquiry, Alfred, Hagan and Alfred's unknown heirs and legatees could not be found. The affidavit also stated that the following actions were taken to ascertain the whereabouts of the unserved defendants: ordered and reviewed credit reports on the defendants on or about December 8, 2009; reviewed Wells Fargo's foreclosure information package for possible addresses on or about December 9, 2009; reviewed the deed to the defendants for possible additional addresses on or about December 9, 2009; reviewed public records of the Cook County probate court for a pending probate case on or about December 15, 2009; made two attempts to serve the unserved defendants; ordered and reviewed the property inspection report to determine occupants of the subject property on or about December 16, 2009. Further, the affidavit stated that the last known address for the unserved defendants was the Roscoe property.

¶ 8        On February 10, 17, and 24, 2010, Wells Fargo served Alfred, Hagan, and Alfred's

unknown heirs and legatees by publication in the *Chicago Daily Law Bulletin*. On August 30, 2010, the trial court entered a judgment of foreclosure and sale. The trial court found that Alfred was indebted to Wells Fargo in the amount of $42,187.31 and ordered that the Roscoe property be sold.

¶ 9        In July 2011, Alfred filed an appearance through counsel. On July 15, 2011, the Roscoe property was sold to Marek and Jolanta Nowakowski (collectively, the Nowakowskis) for $106,000, creating a surplus of $52,223.55. On August 31, 2011, Wells Fargo filed a motion to approve the sale of the Roscoe property. Also, on August 31, 2011, Alfred filed a motion to quash service. In the motion to quash service, Alfred argued that service by publication should be quashed because Wells Fargo only made one attempt to serve him. Attached to Alfred's motion to quash service was an affidavit executed by Alfred which stated that upon due inquiry, he could have been found at the Roscoe property. On September 19, 2011, Wells Fargo filed a response to the motion to quash service. In its response to the motion to quash service, Wells Fargo argued that service by publication was valid because it complied with all the requirements of section 2-206(a) of the Code.

¶ 10       On October 12, 2011, the trial court denied Alfred's motion to quash service. Also, on October 12, 2011, the trial court entered an order approving the sale of the Roscoe property and ordered that the Roscoe property be turned over to the Nowakowskis. The trial court also ordered that the surplus funds be turned over to the clerk of the court. On November 7, 2011, Alfred filed a motion to reconsider the trial court's October 12, 2011 order which denied his motion to quash service. In his motion to reconsider, Alfred argued that Wells Fargo did not conduct "due diligence" in making only one attempt to serve him at the Roscoe property. Additionally, Alfred requested an evidentiary hearing to determine if the "due diligence" requirement was satisfied. Wells Fargo then filed a response to Alfred's motion to reconsider.[1] In January 2012, Alfred filed a reply to Wells Fargo's response to the motion to reconsider. Attached to Alfred's reply to Wells Fargo's response to the motion to reconsider was an affidavit executed by Alfred which stated that: he continuously lived at the Roscoe property since 1991; since 2007 he has rented out the basement and part of the first floor of the Roscoe property; he, and not Beata, collected rent for the Roscoe property; and since 1997, the Roscoe property has been a two-story home with a basement. Also attached was a picture of the Roscoe property from the Cook County assessor's website.

¶ 11       On January 30, 2012, the trial court denied Alfred's motion to reconsider. On February 14, 2012, the trial court entered an order which directed the clerk of the court to issue payment of the surplus funds in the amounts of $33,574.42 to Hagan, and $18,649.13 to Harris. On February 27, 2012, Alfred filed a timely notice of appeal pursuant to Illinois Supreme Court Rule 303 (eff. May 30, 2008).

¶ 12                                          ANALYSIS

¶ 13       Wells Fargo argues that Alfred's appeal should be dismissed because he failed to comply

---

[1]Despite careful examination of the record, we cannot determine the date on which this motion was filed.

with Rule 303(c). Specifically, Wells Fargo argues that although Alfred filed a notice of appeal, he did not serve any of the parties with the notice of appeal as required by Rule 303(c). Wells Fargo states that it only became aware of the appeal when it received notice of the filing of the record on appeal. Wells Fargo contends that even if this court finds that it was not prejudiced by Alfred's violation of Rule 303(c), the violation is inexcusable because there is no indication that any of the other parties (including the new owners of the Roscoe property, the Nowakowskis) are even aware that this case has been appealed or that their right to the Roscoe property is in jeopardy.

¶ 14    Rule 303(c) states, in pertinent part "[t]he party filing the notice of appeal *** shall, within 7 days, file a notice of filing with the reviewing court and serve a copy of the notice of appeal upon every other party and upon any other person or officer entitled by law to notice." Ill. S. Ct. R. 303(c) (eff. May 30, 2008). If the appellant fails to serve a copy of the notice of appeal on an opposing party, the appellate court is not deprived of jurisdiction because the filing of the notice of appeal is the only jurisdictional step in appealing from a decision of the circuit court. *Kawa v. Harnischfeger Corp.*, 204 Ill. App. 3d 206, 209 (1990). "An appeal will not be dismissed on the basis that the opposing party was not served with a copy of the notice of appeal if there was no evidence of prejudice to the party." *Id.* A party is not prejudiced by the appellant's failure to serve a copy of the notice of appeal on the party if the party could file appellate briefs and argue orally. *Id.*; *Simmons v. Chicago Housing Authority*, 267 Ill. App. 3d 545, 551 (1994). However, failure to serve a copy of the notice of appeal on parties who may be adversely affected by the appellate court's decision may result in dismissal of the appeal. *Leyden Fire Protection District v. Township Board of Leyden Township*, 26 Ill. App. 3d 569, 572-73 (1975).

¶ 15    We note that Alfred has forfeited any argument regarding Rule 303(c) because he did not file a reply brief and did not respond to Wells Fargo's argument on this issue. See *Department of Central Management Services/The Department of State Police v. Illinois Labor Relations Board, State Panel*, 2012 IL App (4th) 110356, ¶ 26. Additionally, when asked about the violation of Rule 303(c) during oral argument, Alfred's counsel provided no explanation as to why *none of the parties* were served with a notice of appeal. Thus, we agree with Wells Fargo that Alfred violated Rule 303(c) by failing to serve *any* of the parties with the notice of appeal.

¶ 16    The trial court's orders were in favor of the defendants Hagan and Harris, and against Alfred. Although Alfred, Hagan and Harris were originally all listed as defendants before the trial court, on appeal it is clear that Alfred's interests are adverse to the interests of Hagan and Harris. Thus, if Hagan and Harris were participating in this appeal, they would in substance be appellees. Because Alfred failed to serve a copy of the notice of appeal on Hagan and Harris, who would be substantive appellees, they remain officially unaware of the appeal. Consequently, they were unable to file briefs on appeal or argue orally. In other words, they have been deprived of the opportunity to protect their interests through participation in this appeal. It is thus clear that Hagan and Harris were significantly prejudiced by Alfred's failure to serve a notice of appeal upon them.

¶ 17    Moreover, the prejudice caused by Alfred's violation of Rule 303(c) can be readily recognized by examining the practical consequences to the unserved parties in interest if this

court were to reverse the judgment of the trial court. Clearly, Hagan and Harris would be put in the very unfortunate position of having to repay the surplus funds which they were awarded following the sale of the Roscoe property. It is pointless to speculate about the current availability of funds disbursed well over a year ago. Furthermore, if the judgment of the trial court were reversed and the sale of the Roscoe property unwound, the purchasers of the Roscoe property, the Nowakowskis, would also be greatly disadvantaged. Although the Nowakowskis are not parties of record, they are certainly parties in interest. Thus, not only did Alfred fail to notify the *parties of record*, he also failed to notify all *parties in interest* as best practices would dictate. Even though Wells Fargo was not prejudiced by Alfred's violation of Rule 303(c) because it was aware of the appeal, the other parties are in a far more untenable position. Hagan and Harris, as well as the Nowakowskis, would be seriously prejudiced because of a lack of opportunity to participate in the legal process and to defend their rights. Therefore, we dismiss this appeal due to Alfred's blatant, unexplained violation of Rule 303(c) and the significant prejudice to the parties of record.

¶ 18　　　For the foregoing reasons, this appeal is dismissed.

¶ 19　　　Appeal dismissed.