2016 IL App (1st) 153517
1-15-3517
December 29, 2016

SECOND DIVISION

---

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

---

| | | |
|---|---|---|
| BETTY WING, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 14 M1 301945 |
| | ) | |
| CHICAGO TRANSIT AUTHORITY, | ) | Honorable |
| | ) | Mary R. Minella, |
| Defendant-Appellee. | ) | Judge Presiding. |

---

JUSTICE NEVILLE delivered the judgment of the court, with opinion.
Presiding Justice Hyman specially concurred, with opinion.
Justice Mason specially concurred, with opinion.

**OPINION**

¶ 1    Plaintiff Betty Wing filed a complaint against the Chicago Transit Authority (CTA) alleging that she was a passenger on a CTA bus on September 21, 2013, when the bus driver "[f]ailed to keep the bus's wheelchair lift under proper control," resulting in injuries to her foot. Wing was represented by counsel in the trial court, and the jury returned a verdict in favor of the CTA. In this *pro se* appeal, Wing contends, "The jury voted in favor of the defense after all the shady conspiracy took place," and she objects to a variety of incidents related to the two-day

trial. Wing takes issue with the jury selection, the lengthy amount of time the bus driver spent in the hallway after testifying, the court's rulings during Wing's testimony, defense counsel's closing argument, and defense counsel's failure to obey the court's instruction to remain in the courtroom until the jury was fully dismissed. We affirm because Wing did not preserve any issues for review by filing a posttrial motion, and we cannot conduct a meaningful review of her contentions without a transcript of the trial proceeding.

¶ 2     Wing's opening brief contains two letters, which are dated more than two weeks prior to the notice of appeal, but are addressed to this court. In the letters, Wing narrates some of the events of the trial. Wing's opening brief also includes an unaddressed letter dated September 23, 2013, which describes the incident; a deposition transcript from doctor Thomas Albert; documents from the Chicago police and fire departments relating to the incident; medical bills and records; and a complaint Wing filed against her trial attorney with the Attorney Registration and Disciplinary Commission on January 4, 2016. The record on appeal does not contain these documents, a transcript of the trial, or the video shown to the jury.

¶ 3     After the verdict in favor of the CTA, Wing timely filed her notice of appeal *pro se.*

¶ 4     On appeal, Wing states, "I am asking that everything should be reviewed and an upright decision to [*sic*] made, because it did not happen that day, and I feel that the judge and shady action of the defense attorneys played a major part in it." Wing questions the court's "motive for allowing this," and asks why the court did "not say anything at all to this defense attorney and allow him so much leeway and allow him to go into the hall," over the court's express order.

¶ 5     The CTA maintains that appellate review on the merits of Wing's claim would be improper for three reasons which are subsequently discussed. In the alternative, if we review the

merits, the CTA contends that Wing did not provide any substantive basis for reversal of the jury's verdict.

¶ 6     First, the CTA argues that Wing did not preserve any matters for appellate review because she did not file a posttrial motion in the trial court. We agree. Illinois Supreme Court Rule 366(b)(2) (eff. Feb. 1, 1994) governs appeals after a civil jury trial. Under Rule 366(b)(2)(iii), a party may "not urge as error on review of the ruling on the party's post-trial motion any point, ground, or relief not specified" in the party's posttrial motion. See *Arient v. Shaik*, 2015 IL App (1st) 133969, ¶ 32. Where a party does not file a posttrial motion in a jury case, this court has held that the party fails to preserve any "point, ground, or relief" for review on appeal. See *id.*; see also *In re Parentage of Kimble*, 204 Ill. App. 3d 914, 916-17 (1990). Here, Wing timely filed her notice of appeal, but she did not file a posttrial motion after the court entered the judgment on the jury verdict in favor of the CTA. Therefore, Wing did not preserve any matters for appellate review (see *In re Parentage of Kimble*, 204 Ill. App. 3d at 916-17), and we affirm the judgment of the trial court. See *Arient*, 2015 IL App (1st) 133969, ¶¶ 34, 41.

¶ 7     Second, the CTA contends that the record is insufficient for us to conduct a meaningful review of the judgment below because it does not contain a transcript of the trial proceedings. Again, we agree. Illinois Supreme Court Rule 608(a)(8) (eff. Apr. 8, 2013) provides that the record on appeal must contain the report of proceedings. Where the issue on appeal relates to the conduct of a proceeding, a court cannot review the issue without a report or record of the relevant proceeding. *Webster v. Hartman*, 195 Ill. 2d 426, 432 (2001) (citing *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984)). The burden falls on the appellant, as the party seeking relief from the judgment below, to present a sufficient record. *Corral v. Mervis Industries*, *Inc.*, 217 Ill. 2d

144, 156 (2005). An appellant's *pro se* status does not alleviate the duty to comply with our supreme court's rules governing appellate procedure. *Twardowski v. Holiday Hospitality Franchising, Inc.*, 321 Ill. App. 3d 509, 511 (2001); *Rock Island County v. Boalbey*, 242 Ill. App. 3d 461, 462 (1993).

¶ 8      In her letters to this court, Wing describes incidents that allegedly took place during the pendency of the trial. However, without a record of the proceedings, we cannot determine what happened and if it would amount to legal error. Although Wing attached her treating physician's deposition transcript to her opening brief, it is not in the record on appeal, and we have no way of knowing what his testimony was at trial. Therefore, Wing has not met her burden of providing a sufficient record to review her contentions of error.

¶ 9      Absent a sufficient record, a reviewing court presumes that the trial court's order conformed to the law and had a sufficient factual basis. *Foutch*, 99 Ill. 2d at 392. Doubts arising from an incomplete record are resolved against the appellant. *Corral*, 217 Ill. 2d at 157. Without any basis to evaluate the merits of the claimed error, Wing cannot overcome the presumption that the court's orders at trial complied with the law and that a sufficient factual basis supported the judgment on the verdict. Therefore, we must affirm the judgment of the circuit court. See *id.* (affirming where the deficient factual record was insufficient to overcome the presumption that the trial court's order complied with the law and had a sufficient factual basis).

¶ 10     Third, the CTA points out procedural deficiencies in Wing's opening brief under Illinois Supreme Court Rule 341(h) (eff. Feb. 6, 2013), and requests that we strike her brief and dismiss the appeal. The CTA is correct that Wing's brief is deficient because it lacks a statement of the issue presented for review, a statement of jurisdiction, and a statement of facts with citations to

the record as required by Rule 341(h)(3), (4), (6). Further, as the CTA notes, Wing's argument does not pass muster under Rule 341(h)(7), which provides that an appellant's brief must contain contentions and the reasons therefor, with citation to the authorities upon which the appellant relies. Although we agree with the substance of the CTA's argument, we find that the appropriate remedy is to affirm the judgment, not to dismiss the appeal.

¶ 11    A reviewing court is entitled to the benefit of clearly defined issues with pertinent authority cited and a cohesive legal argument. *Walters v. Rodriguez*, 2011 IL App (1st) 103488, ¶ 5. The appellate court is not a depository in which an appellant may dump the entire matter of argument and research. *Thrall Car Manufacturing Co. v. Lindquist*, 145 Ill. App. 3d 712, 719 (1986). Arguments that are not supported by citations to authority do not meet the requirements of Rule 341(h)(7) and are procedurally defaulted. *Lewis v. Heartland Food Corp.*, 2014 IL App (1st) 123303, ¶ 5. Although a *pro se* appellant's deficient brief does not affect our jurisdiction to consider the appeal (*Twardowski*, 321 Ill. App. 3d at 511), "the rules of procedure for appellate briefs are rules, not mere suggestions." *Longo Realty v. Menard, Inc.*, 2016 IL App (1st) 151231, ¶ 18. When the procedural violations interfere with our review of the issue, we may exercise our discretion and strike a brief for failure to comply with the rules. *Parkway Bank & Trust Co. v. Korzen*, 2013 IL App (1st) 130380, ¶ 10.

¶ 12    Here, the lack of a cohesive legal argument, a reasoned basis for Wing's contentions, or any citation to the record or supporting authority, combined with the deficient record discussed above, interferes with our review. Thus, the opening brief's procedural deficiencies under Rule 341(h) provide an additional basis to disregard the unsupported facts and consider the arguments

in this appeal waived. See *Walters*, 2011 IL App (1st) 103488, ¶ 8 (disregarding the facts and arguments in the plaintiff's opening brief due to procedural deficiencies under Rule 341(h)).

¶ 13    In sum, Wing forfeited appellate review of any issues because she did not file a posttrial motion. See *Arient*, 2015 IL App (1st) 133969, ¶ 32. Based on this record, we cannot determine whether Wing's factual assertions have any merit, and we must presume that the trial court's orders were consistent with the law and supported by sufficient facts. See *Corral*, 217 Ill. 2d at 157. The procedural deficiencies in her opening brief combined with the insufficient record further support our conclusion that we cannot review Wing's claims on the merits. See *Walters*, 2011 IL App (1st) 103488, ¶ 8. Therefore, we need not address the CTA's alternative argument that Wing did not provide any substantive basis for reversal of the jury's verdict.

¶ 14    Accordingly, we affirm the judgment of the circuit court of Cook County.

¶ 15    Affirmed.

¶ 16    PRESIDING JUSTICE HYMAN, specially concurring.

¶ 17    I fully concur in the reasoning and result. That said, Wing's sincere impression of what happened at the trial deserves closer scrutiny. After waiting more than two years to present her case before a jury, Wing writes, "I was not treated fairly." Her *pro se* appellate brief reveals a possible reason for her feeling this way. Although represented by counsel throughout the case, Wing has hardly any understanding of how a trial works. When people do not understand something, they tend to take a negative view of it and assume the worst. Thus, Wing's "I was not treated fairly" is a natural response to a lack of understanding of what transpired at the trial.

¶ 18    Among Wing's complaints are these:

- "The jurors were chosen rather quickly, which was very unfair. During the questioning of the jurors, especially when it came to the kind of work they did and a brief of their history [ ], a few should have automatically been excluded…"

- "The attorneys and the judge went to the back through a door behind the judge's chair and trial began shortly after the completion of jury selection."

- "As my testimony was going forth, the judge stopped my attorney from asking me questions that were relevant to my case."

- "[T]he defense attorney was given the opportunity to question me [and h]e began badgering me while the judge said nothing. The defense attorney continued repeating [*sic*] trying to get me to say what he wanted me to."

¶ 19    What Wing describes may be strange and unsettling to her but are familiar and common occurrences for lawyers on trial.

¶ 20    One incident troubled Wing more than the others. According to Wing, before the judge excused the jury at the end of the first day, the judge "gave direct orders to me and my attorney, as well as the defense attorney not to leave the courtroom for any reasons until all the jurors were completely dismissed. And she would inform us when to leave." According to Wing, "immediately" after this order, "the defense attorney fled into the hall, while the jury was still in the process of being dismissed." Wing "looked at the judge and told my attorney that the judge is not even saying anything." After "a few minutes" the defense attorney "returned to the courtroom as [if] nothing [ ] happened." A couple minutes later, the defense attorney went back into the hallway, then returned to the courtroom, got his coat, and left. Wing wanted her attorney

to bring to the judge's attention that the defense attorney had twice gone into the hall without permission, but he refused to say anything.

¶ 21    Again, Wing felt confused by her counsel's inaction which, by its nature, is not a part of the record but which exacerbated her belief that she was not treated fairly. It does not appear that her counsel took the time to account to Wing for his having stood mute despite the defense attorney's apparent violations of the judge's instruction.

¶ 22    How clients perceive "fairness" depends on more than a trial's outcome. It depends on the process, and if a client does not understand the trial process, fairness gets the blame. Litigants whose counsel keeps them informed and educated will place greater confidence in the outcome. See Clark D. Cunningham, *What Do Clients Want From Their Lawyers?*, 2013 J. Disp. Resol. 143, 146, 149 (2013) (stating that most frequent problems in attorney-client relationship were not related to outcome but to attorney's failure to listen to client, ask appropriate questions, and explain relevant aspects of case and "how the system works"); Greg Berman & Emily Gold, *Procedural Justice From the Bench*, Judges' J., Spring 2012, at 20 (explaining that judge's management of the courtroom promotes perceptions of fairness).

¶ 23    If some good is to emerge from this appeal, it is this—lawyers must keep their clients informed about what is taking place at every step of a trial. This means communicating with clients in nontechnical terms about strategy and objectives, and the trial process itself, court procedures, Rules of Evidence, and judicial pronouncements and rulings. And it means listening to and understanding the client's prospective. While communications in the midst of a trial may not always be practicable, the lawyer must nonetheless act reasonably to inform the client of actions the lawyer has taken on the client's behalf. See Ill. R. Prof'l Conduct (2010) R. 1.4 cmt. 3

(eff. Jan. 1, 2016). Well-informed clients are in a better position to assess the trial's progress, measure risks, and make choices. Clients also will be less inclined to feel they were treated unfairly, which usually leaves the clients satisfied with their representation.

¶ 24    We cannot say whether Wing's attorney ever discussed these issues with her because discussions between attorney and client are, of course, confidential. Moreover, it is not for us to decide whether his conduct met the standards set forth in the Rules of Professional Conduct. (For that reason, I opted not to mention Wing's complaint with the Attorney Registration and Disciplinary Commission.) But the concerns Wing raises in her brief illustrate how a lack of understanding shapes many participants' view of the legal system. Although Justice Mason asserts that this case is an "inappropriate vehicle" for addressing these issues (*infra* ¶ 30), I would contend that Wing's *pro se* status is more, not less, of a reason to address her complaints. We should be sensitive to the reality of a *pro se* appellant who, having lost a case she thought she should have won, cannot afford or attract an attorney to represent her on appeal. To ignore the intangibles and merely offer a legal analysis of the issues is more likely to further her belief that she has not been treated fairly. A short explanation addressing her concerns and assuring her that nothing appears, on its face, to be improper, and reminding lawyers of the importance of communicating with their clients throughout a case, might avoid other litigants from feeling that they did not get a fair shake from the legal system.

¶ 25    In the words of a lawyer who abandoned law for a career as a writer, Johann Wolfgang von Goethe: "And what we understand we cannot blame." Johann Wolfgang von Goethe, Torquato Tasso, act 2, sc. 1.

¶ 26    JUSTICE MASON, specially concurring.

¶ 27    I fully concur with the reasoning and result in this case. Having provided us with no record of the proceedings below, and a brief on appeal consisting of a series of letters addressed to this court and various documents not certified by the clerk, it is impossible to address the merits of any issues raised by Wing. Further, we do know from this limited record that Wing failed to file a posttrial motion and thus has forfeited all issues on appeal. See *Garcia v. Seneca Nursing Home*, 2011 IL App (1st) 103085, ¶ 17 (quoting *Thornton v. Garcini*, 237 Ill. 2d 100, 106 (2009)) ("Ordinarily, an appealing party forfeits review of an issue unless the party both 'object[ed] to an error at trial and includ[ed] it in a written posttrial motion.' ").

¶ 28    I write separately to address Justice Hyman's special concurrence in which he opines that matters raised by Wing in her letters to the court deserve "closer scrutiny." They do not. We routinely refuse to consider matters outside the record (see *Bank of New York Mellon v. Karbowski*, 2014 IL App (1st) 130112, ¶ 24), and we do not relax that rule in cases involving self-represented litigants. Wing's unsupported complaints range from the speed with which the jury was selected ("very unfair," according to Wing) to the trial judge sustaining objections to questions that (again, in Wing's view) "were relevant to my case."

¶ 29    In particular, Justice Hyman addresses Wing's claim regarding an instruction by the trial court at the end of the first day of trial that the litigants and their attorneys were to remain in the courtroom until after all jurors left. In one of her letters, Wing claims that defense counsel disobeyed the court's order and neither the trial court nor Wing's counsel did or said anything. Justice Hyman observes that Wing "felt confused" by her lawyer's inaction, which, in turn, contributed to her belief that "she was not treated fairly." He states: "It does not appear that [Wing's] counsel took the time to account to Wing for his having stood mute despite the defense

attorney's apparent violation of the judge's instruction." *Supra* ¶ 21. Justice Hyman then goes on to exhort lawyers to "keep their clients informed about what is taking place at every step of a trial." *Supra* ¶ 23.

¶ 30    This case is a singularly inappropriate vehicle for these observations and assumptions given the lack of any record supporting them. And using this case as an opportunity to criticize a lawyer for failing to communicate with his client as he is obligated to do (see Ill. R. Prof'l Conduct (2010) R. 1.4 (eff. Jan. 1, 2010)) does a disservice to trial counsel who is not here to defend himself and against whom Wing has filed a complaint with the Attorney Registration and Disciplinary Commission (also attached to her brief).