2026 IL App (1st) 250312-U
No. 1-25-0312
Order filed March 11, 2026

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE *ex rel.* EILEEN O'NEILL BURKE, State's Attorney of Cook County, Illinois, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 23 COFO 2576 |
| 2016 LAND ROVER RANGE ROVER, | ) ) | |
| Defendant | ) ) | Honorable John M. Allegretti, |
| (Gewone Ross, Claimant-Appellant). | ) | Judge, presiding. |

_____

JUSTICE ROCHFORD delivered the judgment of the court.
Presiding Justice Martin and Justice Lampkin concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The circuit court's judgment is affirmed where claimant-appellant failed to present an adequate record for review.

¶ 2    In this civil asset forfeiture case, claimant Gewone Ross appeals from an order, entered after a bench trial, adjudging his claimed property, a 2016 Land Rover Range Rover, to be forfeited pursuant to sections 36-1 and 36-2 of the Criminal Code of 2012 (Code) (720 ILCS 5/36-1, 36-2 (West 2022)). On appeal, Ross contends that the State failed to establish that he "knew or

committed a crime in the vehicle" such that it was subject to forfeiture, and that the court erred by failing "to follow the law of innocent owner." Because Ross has not provided an adequate record for review, we affirm.

¶ 3    The record on appeal consists of one volume of the common law record and does not contain a report of proceedings or an acceptable substitute under Illinois Supreme Court Rule 323 (eff. Jul. 1, 2017).

¶ 4    On December 20, 2023, the State filed a complaint initiating forfeiture proceedings against the subject vehicle under sections 36-1 and 36-2 of the Code. The State alleged that, on November 13, 2023, Oak Forest police officers observed the vehicle with an expired temporary Indiana registration and curbed it. As an officer approached the vehicle on foot, the driver of the vehicle executed a U-turn and fled at a high rate of speed. The officers pursued the vehicle, which was traveling more than 21 miles per hour over the posted speed limit of 35 miles per hour. After the driver of the vehicle ran three red lights, the officers discontinued their pursuit. On November 22, 2023, Chicago police located the vehicle in Chicago. Oak Forest police seized the vehicle on November 30, 2023.

¶ 5    The State claimed that the vehicle was subject to seizure because it had been used during the commission of aggravated fleeing or attempting to elude a peace officer (625 ILCS 5/11-204.1 (West 2022)). The State identified Ross and a lienholder bank as having right, title, or interest in the vehicle.

¶ 6    The lienholder bank filed an appearance and an answer asserting, as an affirmative defense, that it was an innocent owner. Ross also filed an appearance and an answer. In the answer, Ross denied the factual allegations in the complaint describing the vehicle fleeing the police.

¶ 7       On September 25, 2024, the trial court entered an order adjudging the vehicle forfeited in accordance with sections 36-1 and 36-2 of the Code, subject to the rights of the lienholder bank. The order recited that all parties had been served and notified, but that "no appearance, no answer or other pleading [had] been filed." The order did not specify who was present in court.

¶ 8       On September 26, 2024, Ross filed a motion to vacate. He alleged that the vehicle was adjudged forfeited "because the judge said I was late." Ross requested a new court date so that he could continue the process of recovering his vehicle.

¶ 9       On October 7, 2024, the trial court entered a case management order, noting that the bank's attorney and Ross were "on Zoom," and setting a case management conference for 1:30 p.m. on October 21, 2024. The order did not explicitly grant the motion to vacate.

¶ 10      On October 21, 2024, the trial court entered another order adjudging the vehicle forfeited in accordance with sections 36-1 and 36-2 of the Code, subject to the rights of the lienholder bank. The court hand-wrote on the order, "Defaulted @ 2:20 pm claimant not on Zoom [lienholder bank's attorney] on Zoom." The court also noted this was the second time it had entered a default judgment, with the first having been on September 25, 2024, when Ross "was late to court."

¶ 11      On October 22, 2024, Ross filed a motion to vacate the default judgment and asking the court to continue his case. Ultimately, the court set the case for trial on January 28, 2025 without stating the motion to vacate had been granted.

¶ 12      On January 22, 2025, Ross filed a motion titled "Innocent owner." He asserted that he was seeking return of the vehicle because he "did not know or have any knowledge that the crime was going to happen or was likely to happen."

¶ 13    Following a bench trial on January 28, 2025, the trial court entered a written order adjudging the vehicle forfeited in accordance with sections 36-1 and 36-2 of the Code, subject to the bank's lien, and terminating Ross's right, title, and/or interest in the vehicle. The order noted that Ross "withdrew his Motion for Innocent Owner and proceeded to trial on Zoom asserting the affirmative defense of Innocent Owner." The court found the testimony of an Oak Forest police officer to be credible, and the testimony provided by Ross to be inconsistent and not credible. The court stated that it also considered the exhibits received in evidence and the arguments of counsel. The court determined that the State had shown by a preponderance of the evidence that the vehicle was used in the commission of a criminal offense as stated in the complaint, that the vehicle was subject to forfeiture, and that Ross knew or should have known that the vehicle was used in the commission of the criminal offense stated in the complaint. Finally, the court found that Ross "did not establish the affirmative defense of Innocent Owner."

¶ 14    On February 6, 2025, Ross filed a motion to reconsider, arguing that the court misunderstood him or "heard the case wrong during trial." Ross insisted he had no knowledge of the crime and that, when he discovered the vehicle was not where he had left it, he intended to report it stolen. He argued that the court's conclusion that he knew about the vehicle being driven "doesn't make sense."

¶ 15    On February 10, 2025, the trial court entered a written order denying Ross's motion to reconsider. The court observed that Ross presented no newly discovered evidence or changes in the law and had failed to show any error.

¶ 16    Ross filed a timely notice of appeal on February 19, 2025.

¶ 17    Although the State has not filed a response brief, we may proceed under the principles set forth in *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976), and have ordered the appeal taken on Ross's brief and the record alone.

¶ 18    On appeal, Ross contends that the court erred by failing "to follow the law of innocent owner." More specifically, he argues that the State failed to provide evidence that he "knew or committed a crime in the vehicle." Ross questions whether the State showed he consented to criminal use of the vehicle and asks whether the vehicle was adjudged forfeited solely on "the crime and allegations."

¶ 19    In his statement of facts, Ross relates that, at trial, he testified that he parked the vehicle at his grandmother's house and then left town for a few days. When he returned, the vehicle was gone. Thinking it had been stolen, he called the police to report the theft. During the call, he learned the vehicle had been involved in a crime, towed from a different location, and impounded. According to Ross, the Assistant State's Attorney asked him at trial how he intended to report the vehicle stolen if he did not know about the crimes that were committed in it. This did not make sense to Ross, who insisted that he was an innocent owner and had no knowledge of the crimes. At the end of the trial, according to Ross, the court "basically said [it] didn't believe what [Ross] was saying during the trial about reporting the car stolen and *** not having knowledge of the crime."

¶ 20    Ross asserts that the court misunderstood him at trial and did not let him explain in detail why he intended to report the vehicle stolen. He further alleges that, at the hearing on his motion to reconsider, he explained to the court how it "was wrong." Ross concludes that the court "did

not go off facts of the case" but, instead, "went off if [it] believed me or not" despite his insisting numerous times that he was an innocent owner.

¶ 21    As an initial matter, the record does not show that Ross served his notice of appeal on the opposing party, the State, as the "proof of service" section of his notice of appeal states only that he sent the notice to the lienholder bank and no notice of filing has been filed with this court. Illinois Supreme Court Rule 303(c) (eff. July 1, 2017) provides that the party filing the notice of appeal "shall, within 7 days, file a notice of filing with the reviewing court and serve the notice of appeal upon every other party and upon any other person or officer entitled by law to notice. Proof of service *** shall be filed with the notice." *Id.*

¶ 22    If the appellant fails to serve a copy of the notice of appeal on an opposing party, this court is not deprived of jurisdiction, as the filing of the notice of appeal is the "only jurisdictional step" in appealing from a circuit court decision. *Wells Fargo Bank, N.A. v. Zwolinski*, 2013 IL App (1st) 120612, ¶ 14. We will not dismiss an appeal for failure to serve the opposing party with a copy of the notice of appeal if there was no evidence of prejudice to the party. *Id.* A party is not prejudiced by the failure to serve a copy of the notice of appeal if the party could file appellate briefs and argue orally. *Id.* However, "failure to serve a copy of the notice of appeal on parties who may be adversely affected by the appellate court's decision *may* result in dismissal of the appeal." (Emphasis added.) *Id.*

¶ 23    Here, there is no indication that Ross properly served the State with a copy of the notice of appeal in compliance with Rule 303(c), as he did not provide proof of service as required. See *Zwolinski*, 2013 IL App (1st) 120612, ¶ 17. Our records indicate that the State has not filed an appearance and has not filed an appellate brief.

¶ 24    Nevertheless, regardless of whether the State was prejudiced by Ross's failure to serve it with a copy of the notice of appeal, other issues preclude this court from resolving the appeal on the merits.

¶ 25    At the outset, Ross has failed to comply with Illinois Supreme Court Rule 341(h) (eff. Oct. 1, 2020), which provides mandatory procedural rules that govern the content of appellate briefs.

¶ 26    Ross's brief fails to comply with several of the requirements of Rule 341(h), most notably, Rule 341(h)(7) (eff. Oct. 1, 2020), which requires that an appellant's brief contain reasoned argument supported by citations to the authorities and the pages of the record relied on. We are entitled, as a reviewing court, to have the issues on appeal clearly defined, pertinent authority cited, and a cohesive legal argument presented. *Lewis v. Heartland Food Corp.*, 2014 IL App (1st) 123303, ¶ 5. An appellant's *pro se* status does not relieve him of the obligation to comply with Rule 341. *Wing v. Chicago Transit Authority*, 2016 IL App (1st) 153517, ¶ 7. "Arguments that do not comply with Rule 341(h)(7) do not merit consideration on appeal and may be rejected by this court for that reason alone." *Wells Fargo Bank, N.A. v. Sanders*, 2015 IL App (1st) 141272, ¶ 43.

¶ 27    Ross's brief consists primarily of a recitation of facts and repeated assertions that the court erred in not finding he was an innocent owner where the State failed to provide evidence showing he knew or should have known the vehicle was used in the commission of a crime. The brief does not contain reasoned bases for its contentions, any citations to the record, or citations to pertinent authority. The only authorities Ross cites in his brief are two sections of the civil forfeiture statute—section 36-1, which defines what property is subject to forfeiture, and section 36-2.7, which sets forth the procedure for requesting and conducting an innocent owner hearing (see 720 ILCS 5/36-1, 36-2.7 (West 2022))—and a general citation to *United States v. One 1987 Mercedes*

*560 SEL*, 919 F.2d 327 (5th Cir. 1990), a case where the government was found to have presented sufficient evidence to establish probable cause to seize the appellant's assets.

¶ 28     Arguments that are not supported by citations to authority fail to meet the requirements of Supreme Court Rule 341(h)(7) and are procedurally defaulted. *Vilardo v. Barrington Community School District 220*, 406 Ill. App. 3d 713, 720 (2010). Similarly, where a party fails to provide cohesive legal arguments or reasoned bases for his or her contentions, they are forfeited. *Lewis v. Heartland Food Corp.*, 2014 IL App (1st) 123303, ¶ 6.

¶ 29     To the extent that Ross's contentions on appeal could be found to have survived procedural default, our review is impeded by the inadequacy of the record.

¶ 30     As noted, Ross has not included in the record on appeal any transcripts of proceedings or any acceptable substitutes, such as a bystander's report or an agreed statement of facts pursuant to Illinois Supreme Court Rule 323 (eff. July 1, 2017). Our supreme court has long held that, in order to support a claim of error on appeal, the appellant has the burden to present a sufficiently complete record, and that any doubts arising from an incomplete record must be resolved against the appellant. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984)). Absent transcripts or acceptable substitutes, it is presumed that the trial court acted in conformity with the law. *Doe v. Parrillo*, 2021 IL 126577, ¶ 71.

¶ 31     In this appeal, Ross contends that the State failed to prove that he knew or had reason to know that the vehicle was involved in the commission of a crime. He also argues that the court erred in making a decision not based on facts, but, rather, based on "if [it] believed [Ross] or not." Ross has provided no records that would allow us to conduct meaningful review of these matters. Without a record of the forfeiture proceedings, we cannot know what evidence and argument the

trial court heard and cannot evaluate what explanations the court may have given for its decision. See *Foutch*, 99 Ill. 2d at 391 ("From the very nature of an appeal it is evident that the court of review must have before it the record to review in order to determine whether there was the error claimed by the appellant."). We can find no support in the record for Ross's contentions and, therefore, cannot determine whether any error occurred. See, *e.g.*, *In re Marriage of Pavlovich*, 2019 IL App (1st) 172859, ¶ 20 (where the appellant provided a "meager record" and no transcript of proceedings, this court assumed that the trial court's actions conformed with the law).

¶ 32    In summary, Ross has failed to provide reasoned bases for his contentions, citations to the record, and citations to pertinent authorities. In addition, absent an adequate record, we cannot find that the trial court erred.

¶ 33    For the reasons explained above, we affirm the judgment of the circuit court.

¶ 34    Affirmed.