JANICE K. NELSON, Plaintiff-Appellant, v. THE COUNTY OF DE KALB,
Defendant-Appellee.

Second District    No. 2—05—0340

Opinion filed December 20, 2005.

William C. Murphy, Patrick M. Kinnally, and Matthew J. Herman, all of
Kinnally, Krentz, Loran, Hodge & Herman, P.C., of Aurora, for appellant.

Ronald S. Cope and Jamie A. Robinson, both of Michael, Best & Friedrich, LLP, of Chicago, for appellee.

JUSTICE GROMETER delivered the opinion of the court:

Plaintiff, Janice K. Nelson, filed an action seeking a declaration that certain portions of defendant's, De Kalb County's, zoning ordinance (De Kalb County Ordinance § 1.01 *et seq.* (eff. January 1, 2000)) are unconstitutional as applied to her property. The circuit court found that plaintiff did not sustain her burden of showing that the ordinance was invalid. It therefore entered judgment in favor of the county. We hold that the trial court's findings were not contrary to the manifest weight of the evidence; consequently, we affirm its judgment.

The instant appeal arises from plaintiff's attempt to develop property in rural De Kalb County. The property, consisting of approximately 30 acres, currently is largely wooded and contains one single-family residence. Plaintiff, along with her husband, purchased the land in 1976 for $186,000. It was zoned for agriculture at the time of this purchase. During the middle portion of the last century, the property was a gravel quarry. Prior to that time, it had been a farm. Quarrying left the land barren and unsuitable for crop production, and the land is still unsuitable for that purpose. Dr. Paul Carney, plaintiff's predecessor, purchased the land in 1964. He built a residence there and planted a great number of trees, 4,000 of which currently occupy the property. Two lakes, which were formerly gravel pits, are located on the property. Plaintiff wishes to develop the property so that 10 additional residential lots would be added to the land. This use, however, is inconsistent with the way in which the property is zoned.

Under De Kalb County's comprehensive plan, the area in which plaintiff's property is located is designated agricultural. Defendant hired an outside consultant to update the plan in 2000. The revision took 1½ years to complete. The plan was named "Best Plan" by the Illinois Chapter of the American Planning Association in 2003. One stated goal of the plan is to preserve prime agricultural land. Additionally, the plan seeks to promote development near existing municipalities in order to provide stability for owners of agricultural uses, to reduce the costs of the development of infrastructure, and to limit environmental impacts. De Kalb's zoning ordinance follows its comprehensive plan. See De Kalb County Ordinance § 1.01 *et seq.* (eff. January 1, 2000).

Defendant refused to approve plaintiff's planned unit development, so she filed an action seeking a declaration that the portions of

the zoning ordinance that prohibit her from using the property in the manner she wishes are invalid as applied to her property. Determining whether plaintiff's claim is well-founded involves a complex and fact-specific analysis. Accordingly, we will discuss additional particular evidence as it is pertinent to the various aspects of the inquiry.

■ Before proceeding to this inquiry, we emphasize plaintiff's high burden, both before the trial court and especially now on appeal. A zoning ordinance is presumed valid. *La Salle National Bank of Chicago v. County of Cook*, 12 Ill. 2d 40, 46 (1957). To overcome that presumption, a plaintiff must show, by clear and convincing evidence, that the ordinance is arbitrary, unreasonable, and bears no substantial relationship to the general welfare. *Racich v. County of Boone*, 254 Ill. App. 3d 311, 314 (1993). Having failed to convince the trial court that she carried this burden, plaintiff must now demonstrate to us that the trial court's judgment was contrary to the manifest weight of the evidence. *Wakeland v. City of Urbana*, 333 Ill. App. 3d 1131, 1139 (2002). A trial court's decision is against the manifest weight of the evidence only if an opposite conclusion is clearly apparent. *Liebert Corp. v. Mazur*, 357 Ill. App. 3d 265, 276 (2005). Hence, plaintiff now must show that it is clearly evident that at trial she proved, by clear and convincing evidence, that De Kalb County's zoning ordinance, as applied to her, was arbitrary, unreasonable, and bore no substantial relationship to the public welfare.

■ The particulars of our inquiry were set forth by our supreme court long ago in *La Salle National Bank of Chicago*, 12 Ill. 2d at 46. In that case, the court articulated the following six factors to consider: (1) the zoning and existing uses of nearby land; (2) the diminution in value caused by the zoning restriction; (3) the extent to which the public welfare is enhanced by the destruction of property values; (4) the relative gain to the public balanced against the hardship upon the landowner; (5) the suitability of the land to the zoned purpose; and (6) the amount of time the land has been vacant as zoned. *La Salle National Bank*, 12 Ill. 2d at 46-47. Two additional factors that are entitled to weight are the community need for the proposed use and the care that the community has undertaken to plan its development. *Sinclair Pipe Line Co. v. Village of Richton Park*, 19 Ill. 2d 370, 378 (1960). Sometimes, the property's highest and best use is listed as a stand-alone factor (see *Harvard State Bank v. County of McHenry*, 251 Ill. App. 3d 84, 86 (1993)); however, this consideration is subsumed within several of the factors listed above. For example, the hardship to the landowner is necessarily measured by the inability to use the property for its highest and best use. This list of considerations is not exclusive, and each case must be resolved on its own facts and

circumstances. *La Salle National Bank*, 12 Ill. 2d at 46. Finally, a plaintiff must not only prove that the ordinance is invalid; he or she must also show that the proposed use is reasonable. *Glenview State Bank v. Village of Deerfield*, 213 Ill. App. 3d 747, 758 (1991); see also *Schultz v. Village of Lisle*, 53 Ill. 2d 39, 42-43 (1972). With these factors in mind, we now turn to the substance of this appeal.

■ We are first directed to consider the zoning and existing uses of nearby land. *Harvard State Bank*, 251 Ill. App. 3d at 86. Our supreme court has stated that this factor is of paramount importance. *La Grange State Bank v. County of Cook*, 75 Ill. 2d 301, 309 (1979). Additionally, that some nonconforming uses exist does not prevent a municipality from enacting zoning that would otherwise preserve the predominant character of an area. *Wilson v. County of McHenry*, 92 Ill. App. 3d 997, 1001 (1981).

Plaintiff's property and the surrounding area is zoned agricultural. However, there are some nonagricultural uses in the area. Plaintiff points out that there is a gas company operating on the northern boundary of her property. There are also some single-family residences—farm homes—in the area. The town of Cortland lies about 1¹/₂ miles to the north of plaintiff's land. Near Cortland, over 500 homes, which are to be annexed into Cortland, are being developed. There are also two kennels, a landfill, and a tree farm in the area. The majority of the land surrounding plaintiff's property is used for agricultural purposes—specifically, row crops.

Initially, then, since the surrounding area is predominantly agricultural and the land is zoned agricultural, this factor would appear to favor defendant. However, our inquiry is not over. In *Smeja v. County of Boone*, 34 Ill. App. 3d 628, 632 (1975), the court took into account not only zoning and existing uses surrounding the property; the court considered whether the proposed development was incompatible with the surrounding, existing uses. Plaintiff flatly states that it "is inconceivable how the development of ten homes on this wooded tract could be incompatible with nearby agricultural property."

There is, however, conflicting evidence on the issue of compatibility. For example, Porter Martin, a farm real estate broker who testified for plaintiff, opined that the development of plaintiff's property would have no adverse effect on surrounding farming operations. It would also add to the surrounding land's economic value. Martin did acknowledge that conflicts between residential uses and farm uses often exist, involving such issues as noise, dust, traffic, and chemical spraying. Plaintiff contends that the fact that the land is heavily wooded would provide a buffer; however, there was testimony that a substantial number of trees would have to be destroyed to

develop the land. Paul Miller, the planning director for the county, testified that "scatter-shot" development, as opposed to development adjacent to existing communities, puts premature pressure on farmers occupying intervening land to develop.

Indeed, both sides make valid points. In a particular sense, a small residential subdivision would likely have little impact on nearby ongoing farming operations. On a macro scale, the establishment of a subdivision would serve as precedent for the establishment of more. As others sought to develop, they could point to this subdivision as evidence that the character of the area had changed. As Miller testified, economic pressure to develop would come to bear upon farmers. There is nothing unreasonable about the county wishing to keep its lines of development distinct. In sum, given the zoning and the current character of the area along with the conflicting evidence as to compatibility, we cannot say that the manifest weight of the evidence mandates a different conclusion on this factor.

The second factor we must consider is the diminution in value caused by the zoning restriction. *La Salle National Bank*, 12 Ill. 2d at 46-47. This factor must be weighed with care, and its presence is not a decisive consideration. *People ex rel. Alco Deree Co. v. City of Chicago*, 2 Ill. 2d 350, 358 (1954). Two real estate appraisers testified, one for plaintiff and one for defendant. Reed Carnahan, presented by plaintiff, testified that the land was currently worth $400,000 and that it would be worth $1,300,000 if developed. Gary DeClark testified for defendant. He valued the property, in its current condition, at $500,000 in 2002 and $550,000 in 2004. As for development, he opined that the costs of making the property marketable were such that developing the property would actually result in a loss. Accordingly, DeClark opined that the highest and best use for the property was its current use as a single-family residence. Defendant repeatedly mischaracterizes this testimony as DeClark opining that the property "would actually be worth less with additional home sites on" it. DeClark also criticized Carnahan's appraisal. According to DeClark, Carnahan's appraisal represented the "gross sell out value" of the property. Carnahan acknowledged that he used properties in established residential neighborhoods as comparables. This value is not the same as market value, and it does not take into account the costs of developing the property.

Plaintiff argues that DeClark's opinion that the land would be more valuable in its present state is absurd. We are not entirely taken by this criticism, as the costs of developing the land appear substantial, and it may very well not be worth developing from an economic standpoint. It is, of course, for the trial court to resolve such conflicts

in the evidence and evaluate the credibility of witnesses. *Prairie Eye Center, Ltd. v. Butler*, 329 Ill. App. 3d 293, 298-99 (2002). In this case, the trial court apparently resolved this conflict in defendant's favor. However, even if we accept this criticism, Carnahan's valuation was problematic, as it did not represent market value as the property is currently used compared to as potentially developed. Hence, we cannot say it is clearly evident that plaintiff has provided clear and convincing evidence as to the diminution in value of the property. Even if the trial court had rejected DeClark's testimony, it could have also rejected Carnahan's. In the absence of credible evidence, the burden of proof is dispositive. Thus, from plaintiff's perspective, at best this factor favors neither party; at worst, and we do find DeClark's testimony persuasive, it favors defendant.

Third, we must determine the extent to which the public welfare is enhanced by the diminution of property values. *La Salle National Bank*, 12 Ill. 2d at 46-47. The first problem plaintiff faces here is that, as discussed in the last section, the evidence regarding the diminution in value either is inconclusive or favors defendant. If, in fact, plaintiff is not suffering or is suffering only a minor economic loss, it does not take much enhancement to the public welfare to justify the restriction. Moreover, balancing the value of a general goal, such as the preservation of farmland, with a particular consequence, such as diminution of property value, is a difficult and inexact process. This difficulty makes it hard for a court of review to determine that a trial court's conclusion is incorrect where, to do so, we must determine that an opposite conclusion is clearly apparent (*Liebert Corp.*, 357 Ill. App. 3d at 276).

Plaintiff argues that, while she agrees that the preservation of farmland is a legitimate goal, it is not served in this case, because it is undisputed that her land is not suited for farming. She further asserts that development would actually further the public good because, as Carnahan testified, the residential lots she proposes would be marketable. Defendant counters that its policy encourages growth near municipalities, which furthers the public welfare by providing its citizens with better access to water, sewers, police services, and fire protection. Plaintiff's argument ignores the effect, as we discussed in our analysis of the first factor, that development would have on the surrounding area in terms of serving as a precedent for future development and putting pressure on neighboring landowners to develop their land. It simply is not the case that there is no nexus between the development of plaintiff's land and an adverse impact on the preservation of agriculture in the area generally. That plaintiff's land itself is not suitable for the production of row crops is not sufficient for us to

conclude that a conclusion opposite to that drawn by the trial court is clearly apparent.

The fourth factor, the relative gain to the public balanced against the hardship upon the landowner (*La Salle National Bank*, 12 Ill. 2d at 46-47), is also complicated by the valuation issue. Not knowing the economic loss, if any, to plaintiff makes it impossible to assess the magnitude of the hardship to plaintiff. Moreover, if DeClark's testimony is accepted, the property is already being occupied at its highest and best use. Defendant points out that the property has more than doubled in value since plaintiff bought it. Moreover, when she bought it, the land was zoned agricultural. In *Glenview State Bank v. Village of Deerfield*, 213 Ill. App. 3d 747, 762 (1991), the court observed that "purchasers who acquire property with full knowledge of its zoning classification should not expect that the loss in value from the proposed use compared to the current zoning to be persuasive." Finally, it has been held that "[a] loss of a windfall is not a compelling argument against the validity of a zoning ordinance." *Racich v. County of Boone*, 254 Ill. App. 3d 311, 315 (1993). Plaintiff's property has appreciated in value significantly. That the land *might* be worth more if the zoning restriction did not apply is not a sufficient basis to conclude that plaintiff is suffering some sort of hardship sufficient to invalidate the ordinance.

Fifth is the suitability of the land to the zoned purpose. *La Salle National Bank*, 12 Ill. 2d at 46-47. Undeniably, plaintiff's property is not suitable for the production of row crops, which is the predominant form of agriculture in the area. Defendant responds that row crop farming is but one form of agriculture, and plaintiff has not shown that the land would be unsuitable for other agricultural uses permitted under the zoning ordinance. Indeed, the ordinance defines "agriculture" as "the growing of farm crops, truck garden crops, animal and poultry husbandry, apiculture, aquaculture, dairying, floriculture, horticulture, nurseries, tree farms, sod farms, pasturage, viticulture, wholesale greenhouse; and accessory uses customarily incidental to agricultural activities." De Kalb County Ordinance § 2.02 (eff. January 1, 2000). The ordinance also lists numerous uses and special uses under its description of an A-1 agricultural district. De Kalb County Ordinance § 4.02 (eff. January 1, 2000). Plaintiff responds that she should not be required to prove the property unsuitable for every conceivable use permitted under the ordinance and that some uses (*e.g.*, historic site, sod farm, airstrip) are obviously inappropriate. We do note that "tree farm" is a permitted use, and plaintiff's property is apparently suited to growing trees, as it is heavily wooded. Nevertheless, we agree with plaintiff that, for this fac-

tor to count in her favor, she need not disprove the feasibility of every possible permitted use. *Cf. Concerned Citizens for McHenry, Inc. v. City of McHenry*, 76 Ill. App. 3d 798, 805 (1979) ("Defendant Buss complains that his property may be unsuitable for residential development but has presented no evidence that he had made any serious attempt to develop or sell it *for such use*" (emphasis added)). However, that some permitted use could be made of the property, though not the agricultural use typical for the area, does undermine the weight to which this factor is entitled in determining whether the ordinance is unreasonable, arbitrary, and unrelated to the public welfare. Therefore, this factor favors plaintiff, but is not entitled to great weight. Parenthetically, regardless of the weight to which it is entitled, given the outcome of the other factors of this analysis, we would be unable to conclude that the trial court's judgment was contrary to the manifest weight of the evidence.

The sixth and final factor set forth in *La Salle National Bank*, 12 Ill. 2d at 46-47, is the amount of time the land has been vacant as zoned. Plaintiff testified that she has resided on the property since 1976. This factor, then, plainly favors defendant.

Going beyond *La Salle National Bank*, we will next consider the community need for the proposed use and the care that the community has undertaken to plan its development. *Sinclair Pipe Line Co. v. Village of Richton Park*, 19 Ill. 2d 370, 378 (1960). Regarding the needs of the community, it is apparent that the county is expanding, and Carnahan testified that the lots would be marketable. However, it is not clear that the ongoing development on the outskirts of Cortland would not be adequate to meet those needs. In fact, Paul Miller testified that, under its comprehensive plan, the county could accommodate an additional 40,000 people if development occurred at recommended densities. This consideration, then, does not militate in favor of plaintiff's position.

As for the care that De Kalb has taken to plan its development, it is substantial. Defendant has spent a great deal of time and resources developing its comprehensive land-use plan. Indeed, the plan was awarded "Best Plan" by the Illinois Chapter of the American Planning Association in 2003. Having taken great care to plan its development, the county is entitled to a certain amount of deference, free from judicial second-guessing, in the implementation of its growth.

To summarize, the first and sixth factors from *La Salle National Bank* favor defendant, as does the care that defendant has taken in planning its development. Only the fifth factor favors plaintiff, and it does so only to a moderate degree. The evidence regarding the need for plaintiff's proposed development is conflicting; there is evidence that suggests the lots would be marketable, but there is also evidence

that defendant's comprehensive plan has made substantial provisions for growth. The second, third, and fourth factors set forth in *La Salle National Bank* are all dependent to a degree on the magnitude of the economic loss or hardship suffered by plaintiff. *La Salle National Bank*, 12 Ill. 2d at 46-47. As plaintiff's expert's appraisal testimony was called into question by DeClark's testimony, we cannot say it is clearly evident that she demonstrated by clear and convincing evidence that these factors favored her. Moreover, if DeClark's valuation is credited, the second and fourth factors favor defendant. As a majority of the factors favor either defendant or neither party, the trial court's decision was not contrary to the manifest weight of the evidence.

Plaintiff relies primarily upon two cases in arguing that the ordinance is invalid as applied to her. Both are distinguishable. Plaintiff contends that the first, *Smeja*, 34 Ill. App. 3d 628, is "remarkably similar," and indeed it does share many similarities with this case. That case involved a 50-acre parcel located in Boone County. The property was zoned agricultural except for a 300-foot strip fronting a highway, which was zoned for a single-family dwelling. The plaintiff in *Smeja* sought to have all of the land zoned for single-family residences. Fifteen acres of the land were "sub-marginal" for the raising of crops, and the remaining 35 acres were wooded. The parcel was bounded largely by farmland, but it was adjacent to the Belvidere Airport. Notably, the county had permitted the rezoning and development of 12 subdivisions in areas previously designated agricultural. The trial court found that the Boone County zoning ordinance was invalid as applied to the plaintiff's property. *Smeja*, 34 Ill. App. 3d at 630.

The first and most significant difference between this case and *Smeja* is the posture on appeal. The plaintiff in *Smeja* had prevailed in the trial court. Consequently, the question presented to the reviewing court was whether it was clearly apparent that the ordinance was valid. In this case, plaintiff faces a much higher burden. To succeed in this appeal, it is incumbent upon her to demonstrate that the trial court's determination was contrary to the manifest weight of the evidence. *Wakeland*, 333 Ill. App. 3d at 1139.

Other differences exist. The *Smeja* court stated that it had "difficulty in finding that the development of a mostly wooded area as residential would be incompatible with agricultural property contiguous to or in the immediate vicinity of the property in question." *Smeja*, 34 Ill. App. 3d at 632. In this case, evidence exists that supports an inference that plaintiff's proposed development would be incompatible with the agricultural character of the area. Specifically, Martin acknowledged that conflicts sometimes occur between residential and farm uses, and Miller testified that development puts premature pres-

sure on farmers to develop. Additionally, the *Smeja* court accepted as a given that property developed into residential lots has a higher value than farmland. *Smeja*, 34 Ill. App. 3d at 632. While this may be true in a general sense, in this case, DeClark's testimony that the cost of development would exceed the benefit indicates that the land is already being used for its highest and best use. In short, *Smeja* is distinguishable.

Similarly, *Pettee v. County of De Kalb*, 60 Ill. App. 3d 304 (1978), provides little guidance. In that case, the landowner sought to have his land rezoned from agricultural to estate residential, a designation that would have allowed single-family residences on parcels greater than one acre in size. The land was marginal for farming, due to drainage problems. In *Pettee*, both the plaintiff and a planning and zoning consultant testified that there was a need for the proposed development. The court rejected testimony to the contrary because the witness providing the testimony had a contrary financial interest. *Pettee*, 60 Ill. App. 3d at 311. In this case, while Carnahan testified that the development would be marketable, there was also testimony regarding extensive development near Cortland and Miller testified that the county could accommodate an additional 40,000 people under its comprehensive plan. In *Pettee*, 60 Ill. App. 3d at 311-12, the court noted that "[t]he gain to the public from continuation of the existing restrictions on this 80 acres of marginal farmland, as suggested by Lawrence, finds little specific support in this record, whereas the hardship imposed upon plaintiff is real and substantial." In this case, evidence regarding the hardship to plaintiff was questionable at best, as DeClark credibly criticized Carnahan's valuation of the property. Moreover, the *Pettee* court rejected the defendant's expert's testimony that the highest and best use for the property was farmland, because the testimony was based solely on the "general objective of the County of De Kalb to preserve a natural resource, farmland." *Pettee*, 60 Ill. App. 3d at 311. Here, though the objective of the county is the same, DeClark's testimony that the land was already being used for its highest and best use was based on the economics of the situation. Thus, *Pettee* too is distinguishable.

Considering the factors set forth in *La Salle National Bank*, 12 Ill. 2d 40, and subsequent cases, we hold that plaintiff has not shown that a conclusion opposite to that drawn by the trial court is clearly apparent. Accordingly, we are compelled to, and do, affirm its decision.

Affirmed.

O'MALLEY, P.J., and HUTCHINSON, J., concur.