2018 IL App (2d) 160405
Nos. 2-16-0405
Opinion filed July 31, 2018

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | |
|---|---|
| CHARLES F. SHORT III, Individually and on Behalf of Sidewinder Holdings, Ltd., | Appeal from the Circuit Court of Lake County. |
| Plaintiff-Appellant and Cross-Appellee, | |
| v. | No. 10-CH-7073 |
| IAN J. PYE; GEORGE D. BEST; MERIDIAN VENTURES, INC.; 4SAMEDAY SOLUTIONS GP LLC; and 4SAMEDAY SOLUTIONS, LTD., | |
| Defendants-Appellees and Cross-Appellants | |
| (Ted A. Donner; Brad S. Grayson; Strauss & Malk, LLP; Siprut P.C.; and Joseph J. Siprut, Cross-Appellees). | Honorable Luis A. Berrones, Judge, Presiding. |

JUSTICE JORGENSEN delivered the judgment of the court, with opinion.
Justices Hutchinson and Burke concurred in the judgment and opinion.

## OPINION

¶ 1 Defendants, Ian J. Pye; George D. Best; Meridian Ventures, Inc.; 4Sameday Solutions GP, LLC; and 4Sameday Solutions, Ltd., appeal the trial court's rulings (1) denying them sanctions against plaintiff, Charles F. Short III; (2) determining that defendants' sanctions motions against plaintiff's attorneys, Ted A. Donner; Brad S. Grayson; Strauss & Malk, LLP; Siprut P.C.; and Joseph J. Siprut, were untimely; and (3) denying defendants' motion *in limine*

on the issue of whether plaintiff waived, in a motion to reconsider, his attorney-client privilege. We affirm.

¶ 2                                      I. BACKGROUND

¶ 3     Plaintiff, through three sets of attorneys ((1) Donner; (2) Siprut and Siprut P.C. (collectively, Siprut); and (3) Grayson and Strauss & Malk, LLP (collectively Grayson/Strauss & Malk)) filed a total of five (unverified) complaints against defendants alleging, in sum, that defendants induced him into selling his interest in a company, Sidewinder Holdings, Ltd., for insufficient consideration and for less than it was worth. The complaints were either withdrawn or dismissed without prejudice, until October 4, 2013, when the court dismissed with prejudice the fourth amended complaint. No postjudgment motions were filed.

¶ 4                                    A. Rule 137 Motions

¶ 5     On October 21 and October 23, 2013, pursuant to Illinois Supreme Court Rule 137 (eff. July 1, 2013), defendants moved for sanctions against *only* plaintiff, individually. Plaintiff opposed the motion, arguing, in part, that there was a good-faith factual and legal basis for filing the pleadings.

¶ 6     On February 14, 2014, the trial court granted the sanctions motion against plaintiff, finding that plaintiff had alleged facts in latter pleadings that contradicted facts alleged in previous pleadings, ignored in latter complaints facts that had earlier negated his causes of action, and stated causes of action for which he lacked standing. The court ordered defendants to submit fee petitions to determine the amount of the sanctions award.

¶ 7     On March 17, 2014, however, plaintiff moved for reconsideration, arguing in part that defendants had not sustained their burden of demonstrating that sanctions should be levied against him personally, given that Rule 137 provides that sanctions may be assessed against an

attorney, the client, or both, and that matters of strategy and decisions regarding which claims to pursue are generally within the purview of counsel, not the client. Plaintiff asserted that the allegedly sanctionable conduct implicated his attorneys, not himself individually, as his attorneys were responsible for the pleadings.

¶ 8 On May 30, 2014, the court granted plaintiff's motion in part, determining that an evidentiary hearing was necessary to determine whether plaintiff was personally culpable for sanctionable conduct. Defendants asserted that plaintiff had forfeited the issue of proof of culpability; alternatively, they moved for discovery about communications between plaintiff and his attorneys regarding the preparation of the pleadings. The court found that plaintiff had not forfeited the issue of proof of culpability, and it set a hearing to consider defendants' motion for discovery, to which plaintiff objected based on the attorney-client privilege. On January 9, 2015, the court entered an order denying defendants' motion; however, no hearing transcript is contained in the record on appeal.

¶ 9 On January 30, 2015, purportedly at defendants' request, the court permitted defendants to file an "amended petition for sanctions," naming plaintiff's attorneys as respondents. Accordingly, on February 10, 2015, more than one year after the entry of the final judgment, defendants filed an "amended" motion for Rule 137 sanctions, naming plaintiff's attorneys as respondents. The attorneys moved to strike the motion, arguing that it was untimely because it was not filed within 30 days after the final judgment.

¶ 10 On June 11, 2015, after briefing and oral argument, the court agreed with the attorneys and struck defendants' sanctions motion. The court rejected defendants' argument that, because the court had not yet finally ruled on the original sanctions motion against plaintiff, it continued to have jurisdiction over the "amended" motion. The court noted that the issue was not

jurisdictional; rather, like a statute of limitations, Rule 137 requires a sanctions motion to be filed within 30 days after a final judgment or a ruling on a timely postjudgment motion. The court explained that everyone agreed that the timely sanctions motion against plaintiff was not a postjudgment motion and, further, that section 2-616(d) of the Code of Civil Procedure (Code) (735 ILCS 5/2-616(d) (West 2014)), permitting amendments to relate back to earlier filings, concerns only pleadings (and defendants could not, in any event, satisfy those requirements). In contrast, the court found, there is no provision in the Code or the Illinois Supreme Court Rules for amending a motion. The court noted that defendants' original, timely sanctions motion was strategically filed against *only* plaintiff, "for whatever reason," and that defendants had chosen to "pursue the party as opposed to the attorneys or the attorneys and the party." Thus, defendants' "amended" motion was really a new motion for sanctions against new parties, filed outside of Rule 137's time restriction. The court further noted that there were no allegations of fraud or concealment of the attorneys' identities or the alleged misconduct. Defendants raised the concern that, if the court found that plaintiff was not culpable for the alleged sanctionable conduct, then there was no recourse. The court reiterated that defendants initially chose to pursue sanctions against only plaintiff, noting, "You made a strategic decision within 30 days of my final judgment. *** Sometimes there's no remedy for a wrong. I think you're out of luck."[1]

¶ 11          B. Hearing: Sanctions as to Plaintiff

¶ 12    On February 1, 2016, the court held an evidentiary hearing to determine to what extent plaintiff was responsible for the filings subject to sanctions. Plaintiff was the only witness called by the parties (but the hearing transcript exceeds 200 pages). The evidence adduced showed

_____

[1] On July 24, 2015, the court denied defendants' request for an Illinois Supreme Court Rule 304(a) (eff. Feb. 26, 2010) finding on the issue of sanctions against the attorneys.

that, for preparation of the complaints, plaintiff had provided his attorneys with a lengthy (40-page) factual memorandum as well as numerous (approximately 100) supporting documents. In addition, his attorneys performed independent investigations. Plaintiff agreed that he communicated with his attorneys throughout the course of their representation, regarding both facts and strategy, as evidenced by the attorneys' billing records. He agreed that he ran a few "Google" searches on defendants' companies and provided results from those searches to his attorneys to ascertain if any of the information was relevant. However, plaintiff's testimony can be fairly summarized as asserting that he provided his attorneys with facts but did not develop legal theories or draft any pleadings. Plaintiff repeated that he hired the attorneys for their expertise and deferred to their advice.

¶ 13                                                    C. Ruling

¶ 14     On April 29, 2016, the court denied defendants' motion for Rule 137 sanctions against plaintiff. In sum, the court found that the sanctionable conduct concerned legal matters and case strategy and that clients may be sanctioned for such conduct only when they have taken a "very active role" in the case. Here, the court found that defendants failed to meet their burden and that the uncontroverted evidence showed that plaintiff did not play a "very active role" in filing the complaints.

¶ 15     In its written ruling, the court enumerated 37 specific factual findings from the hearing. Those findings include: (1) plaintiff lived in Australia when Donner drafted the initial and amended complaints; (2) plaintiff supplied Donner with facts, in a 40-page memorandum with attached supporting documents, used to draft the complaints, but plaintiff did not draft or help draft the complaints; (3) plaintiff had never personally met Donner; (4) plaintiff had some discussions with Donner before each complaint was filed, and he was provided with a draft of

the complaint to review the day before it was filed; (5) plaintiff had never personally met Joseph Siprut, his second attorney; (6) plaintiff provided Siprut with the same memorandum that he had provided Donner; (7) plaintiff received drafts of the third amended complaint and had some discussions with Siprut about it before it was filed, but he relied on Siprut to develop a litigation strategy for it; (8) Siprut did not explain to plaintiff why the third amended complaint was dismissed, and plaintiff was not aware of the reason for its dismissal until his most recent attorney explained it; (9) Siprut and Grayson discussed the case, and Grayson agreed to substitute in as plaintiff's third counsel and to prepare a fourth amended complaint; (10) plaintiff had not personally met Grayson; (11) plaintiff agreed that a fourth amended complaint should be filed, and he and Grayson had several conversations regarding case strategy; (12) the discussions between plaintiff and Grayson "involved Grayson explaining and telling [plaintiff] what was going to be in the fourth amended complaint," which was the product of Grayson's legal research and the materials provided to Grayson by Siprut; (13) plaintiff did not understand what it meant to file certain allegations "on information and belief," but Grayson told him that it was acceptable to make such allegations, without definitive information to support those claims, as it meant simply that "we believe this to be true and it needs to be proven in deposition"; and (14) plaintiff did not draft any of the filed complaints, nor did he sign or verify any of them.

¶ 16    Based on the foregoing, the court found that plaintiff provided his attorneys with extensive facts on the case, as he believed them to exist, but left it up to his attorneys to determine what claims, if any, could be filed. The attorneys, the court noted, clearly conducted their own factual and legal investigations to determine if the complaints could be filed, and plaintiff relied upon their advice. Further, the court noted that plaintiff's testimony that he let his attorneys draft the complaints and that he did not assist in drafting them was "bolstered by the

fact that certain allegations were made 'on information and belief' a term which is likely unknown or foreign to non-lawyers but which, in the Court's experience, is frequently employed by attorneys in an attempt to bolster a claim which is short on facts." The court further found that the evidence presented did not prove that plaintiff had any role in including the allegations that the court specifically found sanctionable; rather, the evidence showed that the attorneys determined which allegations and causes of action should be included or excluded from the original and subsequent complaints and that plaintiff deferred to their advice, analysis, and recommendations.

¶ 17 Further, the court rejected defendants' argument that it should find plaintiff not credible and, accordingly, culpable for the improper filings. To the contrary, the court specifically found plaintiff's testimony "consistent and credible." Moreover:

"Even if [plaintiff's] testimony was not credible, the defendants still fail to meet their burden of proof[,] since the Court has no basis to impose liability for the sanctions on [plaintiff] based on [plaintiff's] failure to prepare or the claimed lack of credibility when no other evidence was presented that supports the conclusion that plaintiff had a 'very active' role in preparing and filing the offending pleadings."

¶ 18 The trial court denied defendants' motion for sanctions against plaintiff. We note that, in a footnote, the court pointed out that defendants, in their closing briefs and arguments, had referenced and attached a complaint that plaintiff purportedly filed in federal court, after the evidentiary hearing, alleging claims of legal malpractice against his attorneys. The court did not consider that filing in its decision, "as the Court was not asked to take judicial notice of this filing and even if defendants had made such a request the Court would not have granted such a request as the proofs in the case were closed when the hearing concluded on February 1, 2016."

¶ 19    Thereafter, on August 26, 2016, the court denied defendants' motion to reconsider. There, too, defendants argued that the court should consider as newly discovered evidence plaintiff's federal malpractice complaint against his attorneys, as that complaint served to waive the attorney-client privilege and reflected gamesmanship or provided a basis for reopening the proofs.

¶ 20                              D.  Appeals and Motions

¶ 21    On May 27, 2016, plaintiff filed a notice of appeal.[2]  On June 9, 2016, defendants filed a cross-appeal.   In the notice of cross-appeal's caption, plaintiff is named as the sole cross-appellee.  The body of the notice lists the orders appealed from, including the June 11, 2015, order dismissing as untimely defendants' motion for Rule 137 sanctions against plaintiff's attorneys.  However, the notice does not name any of the attorneys, whether as cross-appellees or otherwise, nor were the attorneys served with the notice of cross-appeal.  In fact, the attorneys represent that they did not receive notice until six months later, on December 29, 2016, when defendants filed and served upon them a notice and "amended proof of service," which also failed to name them as parties or identify them as appellees or cross-appellees.

¶ 22    The attorneys moved to dismiss the cross-appeal on the basis that the notice of cross-appeal and service of the notice were defective, such that we lack jurisdiction over them.

_____

[2] This case was assigned two appeal numbers.  Plaintiff's first appeal generated case No. 2-16-0405 and defendants' cross-appeal was filed thereunder.  Those notices were premature, pending defendants' motion to reconsider, and plaintiff filed a second notice of appeal, generating appeal No. 2-16-0803.  On January 12, 2017, the two appeal numbers were consolidated.  On September 7, 2017, plaintiff's appeals were dismissed for want of prosecution. Thus, only the claims raised by defendants in their cross-appeal are at issue here.

Defendants responded to the motions. On July 25, 2017, a panel of this court ordered taken with the case the two motions to dismiss filed by Siprut and Grayson/Strauss & Malk. In contrast, on March 1, 2018, a panel of this court denied the motion to dismiss filed by Donner. Therefore, at this juncture, all the attorneys remain active in this appeal.

¶ 23                                II. ANALYSIS

¶ 24     Defendants raise three overarching arguments on appeal: (1) the trial court erred in refusing to impose sanctions upon plaintiff individually and in denying defendants' motion to reconsider that ruling, (2) the court erred in dismissing defendants' claims for Rule 137 sanctions against plaintiff's attorneys, "based on an erroneous finding that it lacked jurisdiction," and (3) the court erred in denying defendants' motion *in limine* on the issue of whether plaintiff waived the attorney-client privilege by filing his motion to reconsider the February 14, 2014, sanctions order, blaming his attorneys for the sanctionable conduct.

¶ 25                     A. Motions to Dismiss and Rule 137

¶ 26     To streamline the resolution of the issues raised on appeal, we address first the motions to dismiss this appeal as to Siprut and Grayson/Strauss & Malk, followed by the court's underlying decision that defendants' motion for Rule 137 sanctions against all attorneys was untimely.

¶ 27                          i. Motions to Dismiss

¶ 28     Again, the attorneys were not named as cross-appellees in the notice of cross-appeal, nor were they served with the notice of cross-appeal until six months after it was filed. The attorneys argue that the notice violated supreme court rules and that the late notice and service were prejudicial. Grayson/Strauss & Malk note that, in 2014, they were granted leave to withdraw from representing plaintiff and then, two years later, received notice of this appeal, which did not name them as parties. Similarly, Donner asserts that he was granted leave to withdraw his

representation of plaintiff in 2012, was drawn back in and then again dismissed in 2015, received notice of this appeal in 2016, and was not informed that his interests were at stake until he was mentioned in defendants' opening brief. Siprut, in turn, notes that the final judgment was entered in 2013 and that they were dragged back into the case with defendants' untimely 2015 sanctions motion. After prevailing on that motion, Siprut heard nothing about the case for more than one year, until December 29, 2016, when they received service of a notice of cross-appeal that had been filed six months earlier and that did not, in any event, identify Siprut in the caption or otherwise. Siprut claims to have been continuously prejudiced by defendants' disregard of the rules and the "zombie-like nature of this case, which simply will not die" and which continues to require expenditures of time and resources.

¶ 29    Illinois Supreme Court Rule 301 provides that filing a notice of appeal is the sole step in obtaining appellate jurisdiction. Ill. S. Ct. R. 301 (eff. Feb. 1, 1994) ("no other step is jurisdictional."). Further, Illinois Supreme Court Rule 303(b)(1)(ii) (eff. Jan. 1, 2015) provides that the notice of appeal must, in the caption, bear the title of the case, "naming and designating the parties in the same manner as in the circuit court and adding the further designation 'appellant' or 'appellee.' " In addition, Illinois Supreme Court Rule 303(c) (eff. Jan. 1, 2015) provides that, within seven days of filing the notice of appeal, the appellant shall serve a copy of the notice "upon every other party and upon any other person or officer entitled by law to notice."

¶ 30    "The purpose of a notice of appeal is to inform the prevailing party in the trial court that his [or her] opponent seeks review by a higher court." *Nussbaum v. Kennedy*, 267 Ill. App. 3d 325, 328 (1994). A notice is sufficient to confer jurisdiction if, as a whole, it adequately identifies the judgment being appealed and the relief sought, thereby advising the prevailing

party of the nature of the appeal. *Id.* "Where the deficiency is one of form rather than substance, and the appellee is not prejudiced, the failure to comply strictly with the form of notice is not fatal." *Id.*

¶ 31    The attorneys here rely on *Nussbaum*. There, three defendants participated in the trial court proceedings. However, in his notice of appeal, the plaintiff listed in the caption only *one* of the defendants, specifically as the "defendants-appellee [*sic*]." Nevertheless, the plaintiff served notice upon all three defendants. The two defendants who had not been named in the caption argued that the notice of appeal failed to perfect the court's jurisdiction over them, and the appellate court agreed. *Id.* The court noted that the notice's caption listed defendants (plural), but an appellee (singular). Further, the court noted that, if the plaintiff had wished for the court to obtain jurisdiction over the two other defendants, the notice of appeal should have stated so by identifying them. *Id.* The court found that the plaintiff's failure to identify the unnamed defendants as appellees was prejudicial, as the clerk sent the docketing statement and other documents to only the named defendant, who did not serve the other defendants with his brief. The court also noted that the plaintiff never amended the notice and that the two unnamed defendants did not accept the court's jurisdiction by filing briefs or by appearing at oral argument. *Id.* Finally, the court held that the fact that the plaintiff had served the two unnamed defendants with copies of the notice did not cure the jurisdictional defect and that, therefore, its jurisdiction extended to only the named defendant:

"In a civil case, the *only* jurisdictional step in appealing a final judgment of a circuit court is the filing of the notice of appeal. [Citations.] Whether an appellant properly effectuates service does not affect the jurisdiction of the appellate court.

- 11 -

[Citation.] Thus, serving a copy of a notice upon an unnamed party does not bring that person within this court's jurisdiction." *Id.* at 329.

¶ 32    Here, defendants argue that this case is distinguishable from *Nussbaum*, that the notice of cross-appeal complied with Rule 303 in that it named the parties in the caption as they appeared in the trial court, and that no real prejudice occurred to the attorneys, as they received notice before anything substantive happened in the appeal and have been able to participate and protect their interests. We agree.

¶ 33    While the better practice might be to list *in the caption* all persons or entities who should be notified that the judgment upon which they prevailed is being appealed, defendants here complied with Rule 303(b)(1)(ii) in that in the notice of cross-appeal they named the parties as they appeared in the caption in the trial court. Because the attorneys were not named in the caption below, the facts here differ from those in *Nussbaum*, where parties named in the trial court caption were omitted from the notice of appeal's caption. *Nussbaum*, 267 Ill. App. 3d at 328. Further, the question is whether the notice, overall, informed the attorneys of the nature of the appeal. *Id.* In that vein, the notice identified the court's orders that defendants are challenging on appeal, including the order dismissing the motion for Rule 137 sanctions against the attorneys, and therefore, although they were not named in the caption, the attorneys were on notice (once they received it) that defendants were seeking to overturn an order that had benefited them. It is true that the attorneys received service of the notice shockingly late. However, service does not confer jurisdiction. See *Wells Fargo Bank, N.A. v. Zwolinski*, 2013 IL App (1st) 120612, ¶ 14 ("If the appellant fails to serve a copy of the notice of appeal on an opposing party, the appellate court is not deprived of jurisdiction because the filing of the notice of appeal is the only jurisdictional step in appealing from a decision of the circuit court.").

¶ 34    Thus, "an appeal will not be dismissed on the basis that the opposing party was not served with a copy of the notice of appeal if there was no evidence of prejudice to the party." *Id.* Here, it does not appear that, prior to the attorneys' receipt of service of the notice, any briefs were filed or any other substantive actions were taken that affected their interests. We emphasize that we do *not* construe the attorneys' briefs and appearance at oral argument as actions acceding to our jurisdiction; indeed, our order concerning the motions to dismiss forced their hands in that regard. Nevertheless, those actions are relevant to considerations of prejudice, as the totality of the circumstances reflects that the attorneys (1) were permitted to intervene as "non-party cross-appellees"; (2) filed briefs with continued objections to jurisdiction; (3) have been permitted to argue substantively that, if we find jurisdiction appropriate, the dismissal of the Rule 137 motion against them must be affirmed; and (4) appeared at oral argument. See *id.* ("A party is not prejudiced by the appellant's failure to serve a copy of the notice of appeal on the party if the party could file appellate briefs and argue orally.").

¶ 35    Accordingly, consistent with our denial of Donner's motion to dismiss, we hereby deny the motions to dismiss filed by Siprut and Grayson/Strauss & Malk.

¶ 36                                    ii. Rule 137

¶ 37    We turn next to the order that affects the attorneys' interests: specifically, the trial court's June 11, 2015, order denying as untimely defendants' "amended" motion for sanctions against the attorneys. Defendants argue that the trial court erred in finding their amended motion untimely. They assert that, because the trial court continued to have jurisdiction generally over the case and specifically over defendants' timely and still-pending original sanctions motion against plaintiff, the court erroneously found that the amended sanctions motion was untimely. For the following reasons, we affirm the court's ruling.

¶ 38     The trial court determined that the sanctions motion violated Rule 137's time restriction. Accordingly, we are asked to construe the parameters of Rule 137's requirements, which we do as we would interpret a statute. See *Robidoux v. Oliphant*, 201 Ill. 2d 324, 332 (2002). As such, our primary task in construing the rule is to ascertain and give effect to its drafters' intent. *Id.* " 'The most reliable indicator of intent is the language used, which should be given its plain and ordinary meaning.' " *Id.* (quoting *In re Estate of Rennick*, 181 Ill. 2d 395, 405 (1998)). As with a statute, interpretation of "a supreme court rule is a question of law reviewable under the *de novo* standard of review." *People v. Brindley*, 2017 IL App (5th) 160189, ¶ 15.

¶ 39     Rule 137(b) provides:

"(b) Procedure for Alleging Violations of This Rule. All proceedings under this rule shall be brought within the civil action in which the pleading, motion or other document referred to has been filed, and no violation or alleged violation of this rule shall give rise to a separate civil suit, but shall be considered a claim within the same civil action. *Motions brought pursuant to this rule must be filed within 30 days of the entry of final judgment, or if a timely post-judgment motion is filed, within 30 days of the ruling on the post-judgment motion.*" (Emphasis added.) Ill. S. Ct. R. 137(b) (eff. Jan. 4, 2013).

¶ 40     Thus, Rule 137 clearly provides that motions brought pursuant to the rule must be filed within 30 days of the entry of the final judgment or the ruling on a postjudgment motion. Here, there is no dispute that (1) the final judgment was entered on October 4, 2013, when the court dismissed with prejudice plaintiff's fourth amended complaint, (2) there was no postjudgment motion filed, and (3) defendants moved for sanctions against *plaintiff* within 30 days of the October 4, 2013, final judgment. In light of the foregoing, defendants contend that, since their Rule 137 motion against plaintiff was timely, they could "amend" that motion to add parties

outside of the 30-day period as long as the court maintained jurisdiction. Giving the language used in the rule its plain and ordinary meaning, we disagree.

¶ 41     Defendants point to *Woodsmoke Ranch Ass'n v. Steinmetz*, 252 Ill. App. 3d 78 (1993), but their reliance thereon is flawed for several reasons. There, the court found timely a Rule 137 motion that was filed more than 30 days after the trial court dismissed the complaint with prejudice but before the trial court ruled on a pending motion to reconsider. The court reasoned that the rule was identical to its predecessor (Ill. Rev. Stat. 1989, ch. 110, ¶ 2-611), which courts had interpreted as permitting sanctions motions as long as the trial court retained jurisdiction over the case. *Woodsmoke*, 252 Ill. App. 3d at 79. However, the version of Rule 137 considered in *Woodsmoke* (134 Ill. 2d R. 137 (eff. Aug. 1, 1989)) did *not* contain the explicit 30-day time restriction that appears in the current rule. Specifically, *Woodsmoke* was decided in November 1993. Shortly thereafter, effective February 1, 1994, Rule 137 was amended to insert the 30-day time restriction, and a committee comment explains that the rule was "modified to clarify when motions for sanctions must be filed." Ill. S. Ct. R. 137, Committee Comments (adopted Dec. 17, 1993).

¶ 42     Defendants point out that this court, in *Kellett v. Roberts*, 276 Ill. App. 3d 164, 170-71 (1995), considered the amendment to Rule 137 and found that, although we generally presume that an amendment effects a change in the law, that presumption was rebutted by the comment indicating that the amendment was intended to *clarify* the law. We disagree, however, with defendants' application of *Kellett* here, because in *Kellett* we considered the amendment in the context of a different argument; namely, the argument posed was that the amended rule *required* that a sanctions motion be filed within the 30-day period after the final judgment or the ruling on a postjudgment motion, not *earlier*. *Id.* at 170. We rejected the notion that, under the rule, a

sanctions motion filed during the pendency of the case but before the final judgment is premature:

> "We deduce that *the clarification was intended to set the outside limit* on when the motion must be filed for the court to have jurisdiction to consider it. Such a construction of the rule is consistent with and promotes the rule's objective to provide a plain, speedy, and efficient remedy. *** We determine the clarification to establish the *terminal limit* to bring the motion rather than the initial opportunity." (Emphases added.) *Id.* at 171.

¶ 43    We also find readily distinguishable (as did the trial court) *Berkin v. Orland Park Plaza Bank*, 191 Ill. App. 3d 1056 (1989). There, in unique circumstances, the court allowed a "*de facto* amendment" to a timely motion where new claims of sanctionable conduct against the same parties (not a new party) were raised for the first time in a reply brief. The court rejected the argument that the new claims were untimely because they were raised outside of the 30-day period, noting that "elemental fairness" warranted the addition, since misrepresentations and omissions had concealed the particular basis for sanctions until the briefing process. *Id.* at 1062. Here, there were no misrepresentations or other inequities preventing defendants from filing their sanctions motion against the attorneys initially. We find unavailing defendants' claim that they sought to add the attorneys as respondents only because plaintiff argued for the first time in his motion to reconsider that he was not the culpable party and "pointed the finger at his former counsel." Frankly, it is incredible to claim surprise that a party, facing allegations that legal filings were sanctionable, would assert that his attorneys bore responsibility. Thus, we find unavailing defendants' position that joining the attorneys at the outset could have resulted in a

Rule 137 motion against *them*. There is simply no reason why defendants' initial allegations of sanctionable conduct could not have also been filed against the attorneys.

¶ 44 Defendants argue that the purpose of the rule is to ensure that sanctions motions are brought in the underlying case, rather than as a separate proceeding, and that adding the attorneys to the motion was wholly consistent with such a policy, since the underlying case and sanctions issues were still pending and an evidentiary hearing had not yet been conducted. We disagree. While it is true that the rule ensures that the a motion is brought in the underlying case, this does not equate to permitting a motion to be filed against new parties more than 30 days after the final judgment simply because the court has retained jurisdiction. First, as the trial court pointed out, this interpretation would, theoretically, permit numerous, piecemeal amendments to motions over time. Indeed, here, the "amended" motion was filed 16 months after the final judgment was entered. This contravenes the rule's purpose of providing a speedy and efficient remedy. See *Kellett*, 276 Ill. App. 3d at 171. Second, although defendants are technically correct that an evidentiary hearing had not yet been conducted, this was only because the court ordered the hearing after partially granting plaintiff's motion to reconsider and after full briefing on the motion for sanctions against plaintiff. Permitting the motion against the attorneys would have required additional briefing, at a minimum, simply because defendants chose not to file the motion against them initially. Third, although defendants repeatedly cast their attempts to add the attorneys as an "amendment" to the timely motion, we agree with the court that, in fact, they were filing new claims against new parties. See *John G. Phillips & Associates v. Brown*, 197 Ill. 2d 337, 339-40 (2001) ("[M]otions for sanctions under our Rule 137 are 'claims' in the cause of action with which they are connected" and "filing a Rule 137 motion is the functional equivalent

of adding an additional count to a complaint, or counterclaim, depending on which party files the motion.").

¶ 45    In sum, Rule 137's time limitation requires that the motion be filed within 30 days of the judgment or within 30 days of the ruling on the postjudgment motion. The court correctly found untimely defendants' Rule 137 motion against plaintiff's attorneys. We, therefore, proceed to the remainder of defendants' arguments, concerning only plaintiff.

¶ 46                    B. Motion *In Limine*: Attorney-Client Privilege

¶ 47    Before addressing the court's denial of sanctions against plaintiff, we address defendants' argument that the court, prior thereto, erred in denying their motion *in limine*. Specifically, they argue that the court erred in finding that, even though he moved to reconsider the February 14, 2014, sanctions order and blamed his attorneys for the sanctionable conduct, plaintiff did not waive the attorney-client privilege. Defendants assert that, in fact, plaintiff's decision to blame his attorneys in his motion to reconsider effected a waiver of the privilege, and therefore communications between plaintiff and his attorneys were discoverable and subject to examination at the hearing. Defendants assert that, by putting at issue his purported lack of culpability for the sanctionable conduct, plaintiff waived the privilege as to the preparation of the complaints, his communications of the underlying facts to his attorneys, the scope of his inquiry, his discussions with his attorneys regarding the legal theories and bases thereof, and the shifting facts pleaded in various versions of the complaint. We note that, on appeal, defendants complain *only* that plaintiff's motion to reconsider (as opposed to any later conduct or testimony at the hearing) waived the attorney-client privilege, such that the court's ruling on the motion *in limine*, prior to the hearing, was erroneous. For the following reasons, we reject defendants' arguments.

¶ 48    First, we observe that defendants have provided us with an incomplete record, which prevents us from reviewing the trial court's ruling on the motion *in limine*.  The record reflects that the motion was set for a hearing on January 9, 2015, and the order from that date reflects that it was fully briefed and that the court, "being advised of the premises," denied the motion. However, no transcript, bystander's report, or agreed statement of facts pertaining to the hearing was included in the record on appeal.[3]  Thus, we have no means of fully knowing *what* was presented to the court on January 9, 2015, and we are unable to judge the court's ruling.  The appellants bear "the burden to present a sufficiently complete record of the proceedings at trial to support a claim of error, and in the absence of such a record on appeal, it will be presumed that the order entered by the trial court was in conformity with law and had a sufficient factual basis." *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984).  This presumption "is especially strong when, as here, there is an indication that the court below was 'fully advised in the premises.' " *Smolinski v. Vojta*, 363 Ill. App. 3d 752, 758 (2006) (quoting *Mars v. Priester*, 205 Ill. App. 3d 1060, 1066 (1990)).   Thus, in the absence of a sufficient record, we must presume that the court properly denied the motion *in limine*.

¶ 49    Second, we note that, although defendants present authority that, in Illinois, the attorney-client privilege can be waived as to "a communication put 'at issue' by a party who is a holder of the privilege" (*Shapo v. Tires 'N Tracks, Inc.*, 336 Ill. App. 3d 387, 394 (2002)), they cite no authority reflecting the application of that exception to circumstances such as those here.  For example, in *Shapo*, the court noted that when "a client sues his attorney for malpractice, or when

---

[3] No citation to a January 9, 2015, transcript appears in defendants' table of contents of the record on appeal, nor is such a transcript cited in the briefs.  This court has searched the report of proceedings and did not locate a transcript there or elsewhere in the record.

a lawyer sues his client for payment of fees, waiver is applicable to earlier communications between the now-adversarial parties." *Id.* at 394. As such, the court there found that the trial court did not abuse its discretion in finding the privilege waived, where "the core of the instant litigation is premised upon defendant's complaint that its former attorneys were not authorized to settle the case on its behalf." *Id.* Likewise, defendants cite *Waste Management, Inc. v. International Surplus Lines Insurance Co.*, 144 Ill. 2d 178, 200 (1991), where the allegedly privileged documents were put "at issue" by the party holding the privilege, and were, therefore, discoverable, but in circumstances where the "insureds [sought] to have insurers pay for their defense counsel's services while at the same time claiming that insurers have no right to examine counsel's files." Similarly, defendants quote *SPSS, Inc. v. Carnahan-Walsh*, 267 Ill. App. 3d 586, 592 (1994), as reflecting that "[a] party waives a claim of privilege by relying on a legal claim or defense, the truthful resolution of which required the examination of confidential attorney-client communications"; however, there, the clients had waived the privilege by suing the attorney for legal malpractice. See also *Fischel & Kahn, Ltd. v. Van Straaten Gallery, Inc.*, 189 Ill. 2d 579 (2000) (privilege waived where a law firm sued the defendant for attorney fees and the defendant counterclaimed for legal malpractice).[4] None of these cases stands for the proposition that a waiver is effected where, as here, a third party accuses a client of filing frivolous pleadings and the client denies responsibility by shifting the blame to his counsel.

---

[4] Nor do we find applicable here federal cases considering crime-fraud exceptions to privilege. See *Blanchard v. Edgemark Financial Corp.*, 192 F.R.D. 233, 241 (N.D. Ill. 2000); *Cleveland Hair Clinic, Inc. v. Puig*, 968 F. Supp. 1227, 1241 (N.D. Ill. 1996).

¶ 50    In sum, given the lack of a hearing transcript or other record, as well as the lack of pertinent authority, we cannot find that the trial court abused its discretion in denying defendants' motion *in limine*.

¶ 51                    C.  Denial of Rule 137 Sanctions

¶ 52    We turn now to the final issue on appeal, wherein defendants argue that the trial court abused its discretion when it refused to sanction plaintiff individually.  They argue that the court's finding that plaintiff did not actively participate in the litigation was contrary to the manifest weight of the evidence.  Specifically, defendants contend that the court's original finding that the five filed complaints were sanctionable has never been challenged.  Rather, the question is whether plaintiff is culpable for that sanctionable conduct.  Defendants contend that the evidence at the hearing aptly demonstrated plaintiff's culpability and active participation, including, for example, supplying his attorneys with a 40-page memorandum outlining the timeline and history of events in the case and attaching as many as 100 supporting documents.  Further, they note that plaintiff's testimony reflected that he reviewed and approved complaints either before or after they were filed, performed independent research after retaining counsel, understood the theories that his attorneys employed, "knew that the complaints were repeatedly dismissed for failure to state a cause of action, yet encouraged each new set of lawyers to continue to pursue his claims," and regularly communicated with his attorneys.  Defendants contend that plaintiff was simply not credible at the hearing, where he attempted to portray himself as an uninvolved litigant, and that he was unable to recall certain information only because he strategically refused to review his own materials before the hearing.  Similarly, defendants argue that the court erred in refusing to consider plaintiff's decision to file a malpractice complaint 10 days after the hearing, after "hiding behind the attorney-client privilege

for over two years." They assert that plaintiff's actions demonstrate that, by asserting the privilege, he actively and deceptively hid the very evidence that would have demonstrated the extent of his involvement in the case and that the court should have considered this newly discovered evidence of plaintiff's gamesmanship (*i.e.*, the malpractice filing) to (1) reconsider its decision and find him culpable or (2) reopen the proofs and order a new evidentiary hearing. We disagree.

¶ 53    Rule 137 permits a trial court to impose sanctions against a party, his counsel, or both for filing a motion or pleading that is not well grounded in fact or law, lacks a good-faith basis for modification of the law, or is interposed for any improper purpose. *Peterson v. Randhava*, 313 Ill. App. 3d 1, 6-7 (2000). "The purpose of Rule 137 is to prevent the filing of frivolous and false lawsuits"; however, it is not intended "to penalize litigants and their attorneys merely because they were zealous, yet unsuccessful." *Id.* at 7. Because the rule is penal, it must be strictly construed. *Id.* A trial court's sanctions decision is reviewed with "considerable deference" and will be reversed only if the court abused its discretion. See, *e.g.*, *Spiegel v. Hollywood Towers Condominium Ass'n*, 283 Ill. App. 3d 992, 1001 (1996). A trial court abuses its discretion when no reasonable person could take the view it adopted. *Id.* Further, a court's factual findings are contrary to the manifest weight of the evidence when an opposite conclusion is clearly apparent. See, *e.g.*, *Nelson v. County of De Kalb*, 363 Ill. App. 3d 206, 208 (2005).

¶ 54    Here, we cannot find that the trial court abused its discretion when it declined to assess sanctions against plaintiff. Although the court originally found that the complaints were sanctionable because they contradicted earlier pleadings, ignored facts that had earlier negated plaintiff's causes of action, and asserted causes of action for which plaintiff lacked standing, we afford great deference to the court's finding that plaintiff was not responsible for these defects.

The court was presented with plaintiff's testimony, which it found credible and consistent, that his attorneys drafted the complaints. He communicated with them and provided information and facts, but, frankly, it is not sanctionable simply to communicate and inform one's attorneys. Similarly, defendants take issue with the fact that plaintiff filed multiple complaints after previous ones were dismissed, but at least one complaint was simply withdrawn and, further, litigants routinely refile complaints that are dismissed without prejudice. As such, the question at the hearing was whether there was evidence of more culpable conduct, *i.e.*, whether plaintiff actively contributed to the "sanctionable" aspects of the pleadings. See, *e.g.*, *Spiegel*, 283 Ill. App. 3d at 1001 (affirming court's award of sanctions where the culpable party was "very active" in his defense). The court found, however, that the evidence did not bear out that plaintiff was responsible for deciding which facts to include or delete from pleadings, drafting pleadings, or doing anything more than participating in the attorney-client relationship. The court made numerous, specific findings based upon the evidence. It found credible plaintiff's assertion that he was not active in drafting the pleadings, as legal phraseology, such as "on information and belief," would unlikely be used by a layperson. And, again, the court found plaintiff credible and consistent in his testimony. We note that defendants' reliance upon *Spiegel* (as well as other cases) is misplaced in that the court there, giving great deference to the trial court, *affirmed* the trial court's decision to award sanctions, whereas here we are charged with deferring to the court's decision *not* to award them. *Id.* Here, we cannot find that the court's decision was contrary to the manifest weight of the evidence or that no reasonable person would have taken the court's view.

¶ 55    In addition, defendants contend that the trial court erred in failing to consider that plaintiff filed a malpractice complaint 10 days after the sanctions hearing, whereas, if he had

done so 11 days earlier, each and every communication between plaintiff and his attorneys regarding the sanctionable complaints would have been discoverable. Defendants assert that they notified the trial court of plaintiff's malpractice complaint in their written closing arguments and in their motion to reconsider the sanctions ruling, asking the trial court to take judicial notice of the fact that plaintiff had waived the attorney-client privilege and to use that fact to either sanction plaintiff or reopen the proofs.

¶ 56    We reject defendants' argument that the court's failure to reconsider its ruling or reopen the proofs based upon plaintiff's alleged gamesmanship was an abuse of discretion. See *Muhammad v. Muhammad-Rahmah*, 363 Ill. App. 3d 407, 415 (2006) (court reviews for an abuse of discretion a trial court's denial of a motion to reconsider based on matters not presented during the course of the proceedings leading to the issuance of the challenged order); *In re Estate of Bennoon*, 2014 IL App (1st) 122224, ¶ 53 ("We review an order denying a motion to reopen proofs for a clear abuse of discretion"). The court did not abuse its discretion in deciding that plaintiff's filing a malpractice action shortly after the evidentiary hearing, and his alleged gamesmanship in doing so, was not relevant to whether plaintiff was personally culpable for sanctionable conduct concerning the complaints against defendants.

¶ 57                             III. CONCLUSION

¶ 58    For the reasons stated, we affirm the judgment of the circuit court of Lake County.

¶ 59    Affirmed.